[No. 18422. In Bank.—June 18, 1896.]

WALTER W. BYRNE ET AL., RESPONDENT, v. MARY F. BYRNE ET AL., DEFENDANTS. B. McGRATH, APPELLANT.

EVIDENCE—ADMISSIBILITY FOR SPECIAL PURPOSE.—Where offered evidence is admissible for a specific purpose, but not generally, the trial judge, upon being requested so to do by the opposite party, should state the purposes for which it is to be received and considered by him, and his failure to do so is error.

ID.—SECONDARY EVIDENCE—PROOF OF LOSS OF LETTERS.—The admission of parol evidence of the contents of letters, without first laying a foundation by proof of their loss, is error.

TRUST—FOLLOWING TRUST FUNDS.—Upon the death of the trustee, the beneficiary, who is unable to follow the trust fund through its mutations, is placed in the position of a general creditor of the estate.

ID.—INSUFFICIENT IDENTIFICATION.—A trustee invested the trust funds in a drug business, which he conducted until his death, for a period of four years. After his death the business was carried on by his administratrix for over two years. During such two years there had been purchased goods equaling in value the total amount paid for the business. At the time of the commencement of this action by the beneficiaries of the trust, to charge the property, there were general creditors of the business in a large amount, and the assets of the business had greatly decreased. Held, that the beneficiaries had not traced the trust estate sufficiently for its identification.

APPEAL from a judgment of the Superior Court of Nevada County, and from an order refusing a new trial. JOHN CALDWELL, Judge.

The facts are stated in the opinion of the court.

A. J. Ridge, for Appellant.

A. D. Mason, and F. J. Dennis, for Respondents.

HENSHAW, J.—Appeals from the judgment and from the order denying a new trial.

Plaintiffs, who are the children of Michael Byrne, Jr., deceased, commenced this action against the administratrix of his estate and the creditors thereof, seeking a decree that certain property which had come into the possession of the administratrix as the property of the

estate was in fact property held by their father as trustee in trust for them.

The facts averred, sought to be proved, and found by the court, are, generally, that the wife of Michael Byrne, Jr. (the mother of these plaintiffs), died testate, naming Michael Byrne, Jr., her husband, executor of her estate, and leaving all her property to him as trustee for the use and benefit of her children, these plaintiffs, and another child, made defendant in this action. The father, as trustee, accepted the trust, and of the trust property there came into his hands the sum of two thousand five hundred dollars. This money he used in the purchase of the stock, fixtures, and goodwill of a retail drug business in the city of Grass Valley, where the parties resided. He conducted this drug business during his lifetime, and, upon his death, Mary F. Byrne, defendant herein and administratrix of his estate under order of court, continued in the conduct and management of the business. It was carried on at a loss, and was finally closed out.

The estate of said Michael Byrne, Jr., is admittedly insolvent, and the defendants in interest are creditors of his estate with allowed claims. Plaintiffs, having failed to present their claim against the estate within the time contemplated by law, are here seeking to follow, and claim to have followed, and the court finds that they did follow, the specific property of the trust through its mutations in form, with such certainty as justifies it in saying that the two thousand five hundred dollars received by the father in trust is now represented by the drugs, goodwill, and fixtures of the retail store.

The evidence upon the part of the plaintiffs to establish the necessary facts—that there was property in the estate of their deceased mother which was the subject of the trust, that this property came into the hands of their father as trustee, that this identical property was by him used in the purchase of the drug business—consists almost wholly of admissions alleged by one or another of the children to have been made to them by the

father. This evidence, while not in law insufficient, is to the last degree unsatisfactory, in view of the fact that the father is dead and cannot be heard upon the question, and in view cf the further fact that, as this trust property must have come to the father through proceedings in distribution in the estate of his deceased wife, which estate was probated in the county in which this litigation was prosecuted, there was available to plaintiffs the primary evidence of the records and proceedings in that estate.

But, passing this point with the declaration that there is still sufficient to support the findings in this regard, an alleged error of the trial court in the admission of evidence first invites attention. One of the daughters of Michael Byrne, Jr., being upon the witness-stand, testified that her father told her in January, 1883, that he had received two thousand five hundred dollars from her mother's estate. The drug store was bought in December, 1883. Plaintiff's attorney then offered in evidence the petition for the probate of the will of the deceased wife of said Michael Byrne, Jr., which petition, signed by said Michael Byrne, Jr., declared that the character and probable value of the property of the estate was three eighty-acre tracts of land in the state of Indiana, appraised for taxation in said state at two thousand six hundred and forty dollars. Objection was made to the introduction of the petition. The court declared that it was "admitted for the purpose of tending to show the existence of the trust." The following discussion then ensued:

"*Mr. Mason.* We offer it for all purposes, all legitimate purposes.

"*The Court.* It is proper for the purpose of showing, or tending to show, the existence of the trust, and when it is in evidence it can be considered for all purposes.

"*Mr. Ridge.* I want the court to state what purpose it limits it to.

"*The Court.* I state now that it seems to me that it is admissible for the purpose of showing an intention,

or tending to show, that he accepted the trust; it may be, of course, for other purposes.

"*Mr. Ridge.* Now, to that we object on the ground that it is incompetent and irrelevant. There is no denial that M. Byrne, Jr., did accept that trust, whatever it was. Now, to allow it is to give evidence of a fact that is not denied.

"*The Court.* It will be admitted for all purposes that it is competent to establish.

"*Mr. Ridge.* Note our exception.

"Counsel for plaintiff then read the said petition in relation to acres of land situated in Monroe county, Indiana, appraised at two thousand six hundred and forty dollars, the reading of balance being waived."

It is the fact, as counsel for appellant then objected, that there was no issue joined by the pleadings upon the question of the acceptance by Michael Byrne, Jr., of the trust. The offered evidence, therefore, was immaterial upon that point. It is the undoubted rule that, when evidence is offered generally and admitted, it is evidence for all proper purposes, but it is also the rule that evidence may be admissible for a specific purpose, and, when so admissible, the trial judge should state the purposes for which it is to be received and considered by him, or by the jury, and particularly should he do this when, as in the case at bar, his attention is directed to the matter, and he is repeatedly asked to declare those purposes. Thus, for example, a letter may be offered merely to prove the handwriting of a party or of a witness. To admit that letter generally, or for all proper purposes, would admit as well the contents of the letter, and, unless the court by its ruling specifically limits the purpose of the admission, objecting counsel can never know the inner workings of the mind of the court, nor be able to tell for what purpose it was considered. They would thus be deprived of the opportunity of urging upon the attention of this court a valid objection to the introduction of evidence which they had done their utmost to have cast in perfect form. Or, again, a letter

might be admissible in evidence to prove the state or condition of mind of the person writing it, as frequently happens in cases of contested wills under charges of undue influence or fraud. In such an instance the contents of the letter would be admissible as tending to show the state of mind of the writer, but it would not be admissible as establishing, or tending to establish, any facts or recitals or charges which the letter might contain. Yet, if generally admitted, how could objecting counsel know but that the court considered the letter for these purposes?

We come, however, to a much more serious exception taken to the ruling of the court in connection with this very evidence. Counsel for plaintiffs, having read that portion of the petition in relation to the lands in Indiana, asked the following question of the witness:

"Q. Is that the property, Mrs. Cartwright, for which this check was sent on, and which he advised with you in relation to the sale of?"

The witness, over objection and exception, answers: "A. I do know it was the identical property."

Upon cross-examination it is disclosed that she knows it was the identical property, because her father told her so. The following proceedings were then had:

"Q. Mrs. Cartwright, did you see the letter your father wrote to Louden & Meyer, instructing them to sell this property for two thousand five hundred dollars? A. I did.

"Q. Did you see the reply Louden & Meyer wrote to your father? A. I did.

"*The Court.* State the contents of the letter."

Objection is made to this upon the ground that the letters themselves are the best evidence.

"*The Court.* I will allow the evidence, at least that portion of it showing she saw the letter written by her father.

"Exception taken.

"Q. Will you state, Mrs. Cartwright, what the letter was, and what it contained, if anything, that came back

from Louden & Meyer to your father, in response to his letter directing them to sell the property for two thousand five hundred dollars ?

" Same objection as above; objection overruled, exception taken.

"A.   Well, a letter closing the business and inclosing the proceeds of the property, a check—a folded check.

" Then, against the same objection and ruling and exception, the following questions were asked and answered:

" Q.   The transaction was wound up?   A.   Yes, sir, by this letter.

"(No proof of loss of any of these letters was made and of any search for them, nor was any attempt made to account for their nonproduction.)"

The admission of this evidence was palpable error. The witness is asked, both by court and counsel, to testify to the contents of letters without any foundation by proof of loss for the introduction of such secondary evidence. (Code Civ. Proc., secs. 1855, 1937.) Moreover, her answers themselves do not fairly state the contents, but under leading questions from her counsel she is permitted to give her own judgment and conclusions as to the meaning of the contents of the letters.

There is finally to be considered the question whether or not plaintiffs followed the trust fund in its mutations, and have sufficiently identified it to avoid the rule laid down in *Lathrop* v. *Bampton,* 31 Cal. 17, which places the beneficiary who is unable so to follow the trust funds in the position of a general creditor of the estate. The drug business was bought by Michael Byrne, Jr., in 1883. He conducted it until his death in 1887. After his death it was conducted on behalf of his estate by the administratrix thereof for a period of something over two years. During that time the estate bought goods and supplies for the store to the amount of two thousand four hundred and sixty-nine dollars and sixty-three cents. There were outstanding and unsettled accounts due to creditors of the estate who had

furnished supplies for the store. For a period, then, of over eight years a business which had been originally purchased, the stock, fixtures, and goodwill, for two thousand five hundred dollars, had been in active operation. During the last two years of the life of the business there had been purchased goods equaling in value the total amount paid for the property. During all of this time the store was conducted by or on behalf of Michael Byrne, Jr. His credit was used for the purchase of supplies.

The approved claims of creditors for goods furnished to the business exceeded the sum of one thousand dollars. Of the stock in the store at the commencement of this action over one thousand dollars in value represented by these claims was bought, therefore, not by the moneys of the trust, but upon the credit of Byrne. Yet the total value of the business, at the time of the action, was but nineteen hundred dollars.

It is not and cannot be successfully contended that plaintiffs, during all this time, and through all of these mutations, and under these circumstances, can trace the original two thousand five hundred dollars, or its proceeds. If they cannot, then they are relegated to the position of general creditors of their father's estate. Had their action been commenced against their father during his lifetime, a court of equity would have imposed upon him the duty of segregating the trust property from any property of his own which he might have commingled with it, but upon his death other rights intervened—the rights of the creditors here made defendants; and thus comes into application the rule, and thus appears the reason for it, that the plaintiffs, in order that the creditors may not suffer unjust loss, must be able to separate their own property from the general assets of the estate, or, failing to do this, must take their place along with the general creditors, and, like them, look to those assets for reimbursement. While the determination as to whether or not the trust funds have been followed and identified so as to permit of segrega-

tion from the general assets is one of fact, yet the uncontradicted evidence in this case clearly fails to establish the required identity.

The judgment and order are reversed and the cause remanded.

TEMPLE, J., and HARRISON, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment and in so much of the opinion of Justice Henshaw as deals with the exceptions to rulings of the superior court upon objections to evidence. I concur also in his conclusion that the fund in controversy is not sufficiently identified as the property of the plaintiffs. In respect to this matter, however, I base my conclusion upon grounds different in some respects from those stated in the principal opinion. If the findings of the superior court were in other respects supported by the evidence, the mere fact that at the death of the trustee a part of the stock in the drug store remained unpaid for would not, in my opinion, destroy the identification of the trust property. Assuming that the store and goodwill were purchased with money of the trustor; that the business was thereafter carried on by the trustee for the benefit of the plaintiffs at a profit; that the stock was kept replenished out of the receipts of the business; that profits were received and appropriated by the trustee to an amount exceeding all expenses of the trust —in such case it seems clear to my mind that the store and business at the death of the trustee were sufficiently earmarked as the property of the beneficiaries, despite the fact that considerable bills for stock on hand remained unpaid. This circumstance alone could not have furnished a ground for subjecting the fund to the claims of general creditors of the trustee, and, as to those creditors whose claims were on account of stock furnished to the store, they could be protected in this proceeding (to which they are parties) by preferred payment out of the fund, for they are creditors, not of

the trustee—the agent, but of the beneficiaries—the principals.

But the trouble I find with the case is that there is no evidence to support several material findings attacked by the specifications. There is no evidence sufficient to sustain the finding that the business was conducted at a profit; that the stock was replenished out of the receipts of the business, or that it paid the expenses of the trust, and for this reason I conclude that the stock on hand at the death of the trustee was not earmarked as the property of the plaintiffs.

McFARLAND, J., dissenting.—I dissent. I see no sufficient reason for reversing the judgment. The whole record shows, in my opinion, that the errors for which the judgment is reversed are immaterial, and that the drug store was sufficiently identified as trust property.