# BENJAMIN G. LATHROP and MARY LATHROP, Guardians of Augusta Hunter Dean, a Minor *v.* RICHARD BAMPTON, Executor of the Last Will and Testament of Humphrey Griffith, Deceased.

Against whom a Trust will be Enforced.—A Court of equity will enforce a trust against all persons who with notice of the trust come into the possession of the trust property, in the same manner and with like effect as against the original trustee.

Action against Executor to enforce a Trust.—If an action to enforce a trust could not have been maintained against a testator, it cannot be maintained against his executor.

When Trust will not be Enforced against an Executor.—A trust assumed by a testator will not be enforced against his executor when the identity of the trust fund is entirely lost, and it is neither shown to be in the hands of the executor in its primary condition, nor that it was converted by his testator into the property or any part of it in the executor's possession.

Enforcement of Trust upon Specific Property.—Before a *cestui que trust* can claim specific real or personal property in the enforcement of the trust, he must show that it is the identical trust property, or that it is the fruit or product thereof in a new form.

Remedy of *Cestui que Trust* against Trustee.—When the *cestui que trust* can identify the trust fund, either in its original or in a substituted form, he may elect to hold the original or substituted property, or may hold the trustee personally liable; but if he cannot identify the property he must rely on the personal liability of the trustee.

Claim of *Cestui que Trust* against Estate of Trustee.—If the testator during his lifetime mingled the money of the *cestui que trust* with his own, and after his death neither the trust money nor property into which it was converted can be

3

identified in the hands of the executor, the *cestui que trust* has only a claim against the estate, which must be presented to the executor for allowance, as required by the Probate Act.

WHEN EXECUTOR CAN BE HELD TO ACCOUNT AS TRUSTEE.—If the executor has come into the possession of the trust fund or its substitute, so that the same can be identified, he can be held to account, and charged as a trustee upon the same terms as his testator held the trust, and the relationship of trustee and *cestui que trust* will be added to that of executor.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

In the year 1852 Humphrey Griffith was appointed guardian of the person and estate of Augusta Hunter Dean, by the Probate Court of Yolo County. On the twelfth day of June, 1863, plaintiffs were appointed such guardians by the same Court.

The other facts are stated in the opinion of the Court.

*H. H. Hartley*, for Appellant, admitted that as between guardian and ward, when the guardian received money, and used it with his own, and kept no separate account, that the ward was entitled to claim any money on hand to the amount received by the guardian for the ward, and that if the money of the ward had been invested without authority in real or personal estate, the ward might claim such real or personal estate, or might treat the guardian as a debtor. He argued, however, that by the receipt of the ward's money no lien was acquired against the estate of the guardian or priority created over the other creditors of the guardian; and cited Hill on Liabilities, 759; and 2 Story's Equity Juris., Secs. 1,285–86. He also argued that although, as between guardian and ward, while the money of the ward or its proceeds remained in the hands of the guardian, the ward could claim the same absolutely, and had a special lien thereon, yet when there was no property which the ward could trace or earmark as the trust fund, and its identity was lost, that then the simple *status* of creditor and debtor existed as between guardian and ward and the representative of either; and cited Tiffany on Trusts and Trustees, 33, 34. He also argued that

whenever a guardian or trustee died, the effects of the ward or *cestui que trust*, if they could be distinctly marked and traced, did not go into the hands of the executor or administrator as such, and were no part of the assets of the estate; and that the ward, his guardian, or *cestui que trust*, could claim the fund or property, and remove it from the assets of the estate; and that if the executor or administrator refused on demand to deliver up the trust fund, an action could be maintained against them personally; and cited *Farnsworth* v. *Oliphant*, 19 Barb. 34, 35.

*Charles N. Fox*, for Respondents, argued that as Griffith in his lifetime had wrongfully converted the trust fund, not only he but his property was liable therefor; and that as the claim could have been enforced against his property in his lifetime, it could still be enforced against the property of the testator in the hands of the executor; and cited Story's Eq. Juris., Secs. 533, 1,257–58, 1,285–86. He also argued that this was not a claim for damages for breach of trust, but a claim for the subject of the trust itself, and need not be presented to the executor for his allowance; and cited *People* v. *Houghtaling*, 7 Cal. 348; and *Gunter* v. *Janes*, 9 Cal. 643. He also argued that if the trustee so mingled the property of the *cestui que trust* with his own that it could not be identified, that the *cestui que trust* was entitled to the entire estate to the extent of the value of the trust fund; and cited Paley on Agency, 48; Story on Agency, 205; *Hart* v. *Ten Eyck*, 2 John. Ch. R. 108; *Lupton* v. *White*, 15 Ves. 432; and *Docker* v. *Somes*, 2 Mylne & K. 635. He also argued that a guardian could not by his own act become the simple debtor of the ward; and cited *Seaman* v. *Duryea*, 10 Barb. S. C. 523.

By the Court, SANDERSON, J.:

The facts of this case, so far as a statement of them is necessary to our present purpose, are substantially as follows:

Humphrey Griffith, now deceased, in February, 1859, then being the guardian of Augusta Hunter Dean, now the ward

of the present plaintiffs, came into the possession of the sum of two thousand five hundred dollars, in gold coin of the United States, derived from a lawful sale of certain real estate in which he had previously, upon the consent of the Probate Court, invested the estate of his ward. He never afterward invested said sum or any part thereof for the benefit of his ward; nor did he keep the same separate and apart from his private funds, or keep any account thereof, or of the incomes or expenses therefrom between himself and his ward; but, on the contrary, mixed the same with his private funds and used it in his general business expenditures and investments, and never afterward separated the same so that it could be distinguished from his own private property.

In March, 1863, Griffith died, without having rendered any account of his transactions as guardian, or made any provision for the settlement of his accounts as such; but leaving a last will and testament, in which he attempted to dispose of all the money and all the estate, real and personal, in his possession as his sole and individual property, regardless of any supposed interest which his ward might have therein.

Afterward, in April, 1863, his will was admitted to probate, and the defendant Bampton appointed executor, who thereupon took possession of all the money, property and effects of every kind of which his testator died possessed, and at the time this action was brought was engaged in administering upon the same as the estate of his testator, regardless of all claims thereto on behalf of Augusta Hunter Dean. Among the assets which came into the hands of the defendant, there was only the sum of two hundred dollars in money.

The estate of Griffith is insolvent, and the sureties upon his official bond as guardian are also insolvent and unable to respond for the trust fund so received and held by him.

When the property, real or personal, in the possession of Griffith at the time of his death was acquired by him, whether before or after he came into the possession of the trust fund does not appear; nor does it appear that any of said property,

real or personal, was purchased by him with said trust fund or any part thereof.

Upon this state of facts, the defendant having refused to account to and with the plaintiffs touching said trust, this action was brought for the purpose of subjecting the entire assets in the hands of the defendant to the trust in question, and to compel the defendant to pay over the full amount of said trust fund, with interest, out of the assets in his hands, before any part of the same were otherwise used or appropriated in the due course of administration.

No "claim" was ever presented to the defendant by the plaintiffs, or any one else, on behalf of Augusta Hunter Dean, as provided in the Act concerning the settlement of the estates of deceased persons.

In the Court below the plaintiffs obtained a decree for the payment of two thousand eight hundred and forty-three dollars and fifteen cents out of the assets generally in the hands of the defendant as executor prior to any use or appropriation of the same in the course of his administration; and the defendant has appealed, claiming that the judgment cannot be sustained upon the facts as alleged in the complaint or as found by the Court.

## *When Court of equity will enforce a trust.*

As claimed by counsel for respondents there can be no doubt but that a Court of equity will enforce a trust against all persons, who with notice of the trust may come into possession of the trust property, in the same manner and with like force and effect as against the original trustee. Hence, if this action could have been maintained against Griffith in his lifetime, it may now be maintained against his executor. But so far as the action may be regarded as a case in equity to reach specific property, or a specific fund held in trust, it is clear that it could not have been maintained against Griffith in his lifetime upon the facts disclosed by the record before us, and if so, it, as a matter of course, cannot be maintained against his executor.

Except as to the two hundred dollars in money, there is no pretense that any of the real or personal property now in the hands of the defendant as executor once constituted the whole or a part of the trust fund. On the contrary there is nothing to show that such property, or any part thereof, was purchased or acquired by Griffith subsequent to the 4th day of February, 1859, the day on which the twenty-five hundred dollars realized from the sale of his ward's estate came into his hands. *Non constat* but that it may all have been owned and possessed by him on that day. Such being the case there is no ground upon which it can be inferred, much less asserted, that he employed the trust fund in its acquisition. It is true the Court finds generally that he mixed the trust money with his own and used both in his general business expenditures and investments, but the Court does not find, nor does the complaint allege, that any of his estate now in the custody of the defendant is the fruit or product of those investments. Such investments may have proved total failures and nothing realized therefrom. But be that as it may, as already stated, there is nothing to show that the property in the hands of the defendant is the product of such investments.

### *When* cestui que trust *can claim specific property.*

Before a *cestui que trust* can claim specific real or personal property he must show that it is the identical property originally covered by the trust, or that it is the fruit or product thereof in a new form. The rule upon this subjet is well and concisely stated by Mr. Justice Lewis in *Thompson's Case,* (22 Penn. State R. 17) : " Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held, in its new form, liable to the rights of the *cestui que trust.* No change of its state and form can divest it of such trust. So long as it can be identified either as the original property of the *cestui que trust,* or as the product of it, equity will follow it ; and the right of reclamation attaches to it until detatched by the superior equity of a

*bona fide* purchaser for a valuable consideration without notice. The substitute for the original thing follows the nature of the thing itself so long as it can be ascertained to be such. But the right of pursuing it fails when the means of ascertainment fails. This is always the case where the subject matter is turned into money and mixed and confounded in a general mass of property of the same description." (Story's Equity, Secs. 1,257–9 ; Tiffany and Bullard on Trusts and Trustees, 33, 34.)

### *When* cestui que trust *may elect between personal liability and specific property.*

Where a trustee, in violation of his trust, invests the trust property or its proceeds in any other property, the *cestui que trust* may elect to hold the substituted property subject to the trust or to hold the trustee personally liable to him for the breach of the trust. The former he can do, however, only when he can follow and identify the property either in its original or substituted form, as we have already seen. If this cannot be done, the right of the *cestui que trust* to elect is gone, because its exercise has become impossible, and he is therefore forced to rely upon the personal liability of the trustee ; and such seems to be the condition of the *cestui que trust* in the present case. When thus forced to rely upon the personal liability of the trustee, a *cestui que trust* occupies a position towards the estate of the trustee which is no better, but is identical with that of a simple contract creditor. He has no special lien upon the general estate of the trustee which is superior to that of any other creditor ; for the specific property covered by the trust is gone, and nothing is left to the *cestui que trust* except a naked claim for damages generally, on account of the breach, to be obtained through an action at law, attended by all the incidents of a like action on behalf of one who is not the beneficiary of a trust.

The cases of the *People* v. *Houghtaling*, 7 Cal. 348, *Gunter* v. *Janes*, 9 Cal. 643, and *Wells, Fargo & Co.* v. *Robinson*, 13

Cal. 133, are, as we conceive, in no respect at war with the foregoing views, but on the contrary in harmony therewith.

Nor do we think this action can be sustained as to the two hundred dollars in money. The identity of a trust fund consisting of money may be preserved so long as it can be followed and distinguished from all other funds, not by identifying the individual pieces or coins, but by showing a separate and independent fund or value, readily distinguishable from all other funds. (*The United States* v. *The Inhabitants of Waterborough*, Davies R., 154.) That has not been done in this case.

Our conclusion is that the plaintiffs, upon the facts as disclosed by the record, had only a claim against the estate of Griffith, upon which they could have recovered had the same been presented to the defendant as required by the Act concerning the settlement of the estates of deceased persons, but that they are not entitled to the relief which they obtained in the Court below. Had the demurrer to the complaint been sustained, it is possible that the plaintiffs might have been able by amendment to have made a case within the principles announced by us. We therefore accompany the judgment of reversal with an order granting a new trial.

Judgment reversed and new trial ordered.

By the Court, SANDERSON, J., on rehearing:

After our former judgment was rendered, a petition for a rehearing was filed, in which the ground was taken for the first time that the complaint might be treated as a bill in equity for an account, and that in that aspect no presentation of the claim to the defendant before suit could be necessary, and hence that the judgment, instead of being reversed, should be so modified as to convert it into an ordinary judgment for so much money, to be paid in the due course of administration out of the assets in the hands of the defendant. Upon this point we deemed it proper that an argument should be had, and the case was accordingly opened for that purpose.

Upon further consideration, we are satisfied, however, that there are no grounds upon which this can be treated as an action for an account. The complaint is not drawn upon any such theory, and no facts are stated which would entitle the plaintiffs to an action of that character. The defendant cannot be charged and held to account as a trustee, except upon the averment that he has come into the possession of the trust fund or its substitute. If at the time of his death the defendant's testator was in the possession of the trust fund, or other property into which he may have converted it, and such fund or other property had come into the possession of the defendant, he would have held it upon the same terms as his testator held it and the relation of trustee to the ward of the plaintiffs would have been added to that of executor by virtue of his successorship. Such fund or other property would have constituted no part of the testator's assets, and the defendant would not have held it in his capacity as executor but in his capacity as succeeding trustee to the plaintiffs' ward, and might have been compelled to account as such. But such is not the case. Neither the trust fund, nor any substitute for it which can be identified as such, has come into the hands of the defendant. On the contrary, the trust estate is gone, or, which amounts to the same thing, its identity is entirely lost, for it is not shown to be in the hands of the defendant in its primary condition, or that it was converted by the defendant's testator into the property or any part of it now in the defendant's possession as executor. Hence the defendant does not stand in the relation of trustee to the ward of the plaintiffs beyond the obligations imposed by his office as executor, and she has no remedy against him except such as belongs to a general creditor of the estate. (*Trecothick* v. *Austin*, 4 Mason, 29 ; *Johnson* v. *Ames*, 11 Pick. 181.)

We are of the opinion that there is nothing in the case which entitles it to be regarded as an action for an account, or exempts it from the operation of that provision of the Pro-

bate Act which requires all claims to be presented to the executor or administrator before an action is brought.

Judgment reversed and new trial ordered.