REITER v. ROTHSCHILD.

No. 15,045; August 16, 1893.

33 Pac. 849.

**Estate of Decedent—Money Paid to Testator as Security.—** Plaintiff leased property of R., and gave him $500 as security for the lease, he agreeing to pay it back on the expiration of the lease. R. died before the expiration of the lease, and H., who was appointed his executrix, filed an inventory, which recited: "Moneys belonging to said deceased which has come to the hands of the executrix . . . . $500, held as security for lease from" plaintiff. H. died after the termination of the lease. Held, that it was not necessary to present a claim for the $500 against the estate of R., but that an action might be maintained therefor against the estate of H.

**Estate of Decedent—Money Paid to Testator as Security.**—In view of the sworn statement of H., the finding of the court that she had in her possession the money deposited by plaintiff is supported by the evidence, though her executor testified that he made such statement, and that as a matter of fact it was not true, but was made because they felt she was morally liable for the money.

APPEAL from Superior Court, City and County of San Francisco; J. C. B. Hebbard, Judge.

Action by Catherine Reiter against Joseph Rothschild, executor of Hannah Rothschild, deceased, to recover money deposited by plaintiff with H. Rothschild, whose executrix was Hannah Rothschild. Judgment for plaintiff. Defendant appeals. Affirmed.

Jos. Rothschild for appellant; Wm. G. Cousins and Wm. B. Sharp for respondent.

TEMPLE, C.—Appeal from judgment and order denying new trial. From the findings and undisputed evidence it appears that on December 29, 1886, Henry Rothschild by indenture leased to the plaintiff the premises known as No. 835 on Sacramento street, San Francisco, for the term of three years and five months, beginning January 19, 1887, at a monthly rental of $125. On the same day the parties to the lease executed another instrument in writing, wherein it is recited as follows:

"And whereas, as security for the prompt payment of the rent therein reserved and agreed to be paid by the said party of the second part to the party of the first part, at the times and on the conditions therein mentioned, and to and for the faithful compliance on her part with and performance of all the terms, covenants, promises, and agreements mentioned and set forth in the said lease, which said lease is here referred to and made a part of this agreement, the said party of the second part has paid to, deposited, and left with H. Rothschild the sum of five hundred dollars ($500) in gold coin, to be kept, used and employed by him only for the uses and purposes herein stated: Now, this agreement witnesseth that if the said party of the second part shall [well] and truly pay all rents and perform and execute all the promises, covenants,

and conditions of the said lease, as therein contained on her part, then, and in that event, at the expiration and completion of the term of said lease, the said H. Rothschild hereby agrees to pay back the said sum of five hundred dollars ($500) to the said party of the second part.''

· It was further stated that, in case the tenant did not perform her covenants, Rothschild was authorized to retain the $500 as liquidated damages. On the same day Mrs. Reiter delivered the money to Rothschild, receiving the following receipt:

''Received, San Francisco, December 19, 1886, of and from Catherine Reiter, the sum of five hundred dollars, to be kept, used, and employed by me according to and upon the terms and conditions of the foregoing agreement, and in pursuance thereof.

''H. ROTHSCHILD.

''Witness: E. C. HISGEN.''

Mrs. Reiter entered into possession under the lease, occupied the premises for the full term, and upon its termination, June 19, 1890, quietly surrendered the premises to the representatives of H. Rothschild. It is agreed that she paid her rent when due, and did in all respects perform all the agreements, promises, conditions, and covenants on her part in the lease. · Before the expiration of the term, however, to wit, May 4, 1889, Henry Rothschild died testate, and on May 24th of the same year his widow, Hannah Rothschild, was appointed executrix of his will. The usual notice to creditors was published by her prior to June 24, 1889. June 10, 1889, Hannah Rothschild, as executrix of the will of Henry Rothschild; returned and filed an inventory of said estate, verified by her oath, as required by law, in which the following appears: ''Moneys belonging to said deceased which have come to the hands of the executrix as follows: Cash, $1,307.50; $500, held as security for lease from Catherine Reiter, paid December 29, 1886, $500.00.'' The verification states that the foregoing inventory contains a true statement of all the estate of said deceased which has come to her knowledge and possession, and particularly of all moneys belonging to said deceased. No claim of any kind was ever presented by plaintiff, or for her, against the estate of Henry Rothschild, deceased.

After the expiration of the term of the lease, to wit, October 26, 1889, Hannah Rothschild died intestate. November 18, 1889, Joseph Rothschild was appointed administrator with the will annexed of the estate of Henry Rothschild, and March 10, 1890, the administration of said estate was closed, and the administrator discharged. November 18, 1889, Joseph Rothschild was also appointed executor of the will of Hannah Rothschild, deceased, and duly qualified, and is still such executor. September 16, 1890, the plaintiff presented her claim against the estate of Hannah Rothschild in due form to the executor, by whom it was rejected September 29, 1890. This suit was brought to have judgment establishing her claim against that estate. Defendant denies that he received or has the money sued for. If Hannah Rothschild, therefore, received the $500 deposited with Henry Rothschild by plaintiff, she must have converted it to her own use. As a witness the defendant says that he thinks plaintiff ought to have the money, but he says, as a lawyer and as executor, he thinks he should not pay it unless she establishes a legal claim to it. She ought to have presented the claim to the estate of Henry Rothschild, and, not having done so, he cannot pay it. This suggests the question raised on this appeal.

1. It is first suggested that it is averred in the complaint that the money was received by Hannah Rothschild as executrix, and it is claimed what she held as executrix must belong to the estate. The complaint also avers that Hannah Rothschild held the money for the use of the plaintiff. This is a very comprehensive allegation. It would be supported by any evidence which proves that she had money which, in equity and good conscience, she ought to pay to plaintiff. It was not necessary to aver that she received the money as executrix, yet in this case it was literally true, and the allegation does no harm. The leasehold estate had not terminated when Henry Rothschild died. Of course, there still remained something to be done by plaintiff, for the performance of which the money was held as security. In the absence of a showing we must presume that the premises and the lease still belonged to the estate, and Hannah Rothschild, executrix, would be entitled to retain the money until Mrs. Reiter had fully performed her covenants. When that was done, as it was, while Mrs. Rothschild was executrix, the estate had

no further interest in it, and Mrs. Rothschild was then a mere bailee of the money for Mrs. Reiter, and an action might have been maintained against her for it without demand: Quimby v. Lyon, 63 Cal. 394. If this be so, it is evident that it was not necessary to present the claim against the estate of Henry Rothschild, even if plaintiff might have elected to do so: See, on this subject, Gunter v. Janes, 9 Cal. 658; Lathrop v. Bampton, 31 Cal. 24, 89 Am. Dec. 141; Roach v. Caraffa, 85 Cal. 437, 25 Pac. 22; Rowland v. Madden, 72 Cal. 17, 12 Pac. 226, 870; Von Schmidt v. Bourn, 50 Cal. 616.

2. It is claimed by the appellant that there was no evidence to sustain the finding of the court that Hannah Rothschild had in her possession the money deposited by plaintiff. In view of the sworn statement of Hannah Rothschild, quoted above, it is difficult to comprehend this contention; but the point seems to be that defendant was himself the only one having personal knowledge of the matter, and he was a witness at the trial. He testified, among other things, that he had personally attended to the business for Henry and Hannah Rothschild, who were his parents. He drew the lease and the agreement, received the money from Mrs. Reiter for his father, and handed it to his father. He testified that Henry Rothschild put the money with his own, did not keep it separate, and that Mrs. Rothschild did not receive the $500, or any portion of it, either as an individual or as executrix. He says: "She never included it in the inventory, and it never appeared there, because she never received it." He prepared the inventory himself, as the attorney of Mrs. Rothschild, and further testified in regard to the statement contained in it: "Question. And yet you let her sign that? Answer. Yes, sir; upon my advice that she should charge herself with the money, although she never got a dollar of it. I took the position that she was morally, if not legally, liable for this money, although she never got the money. It was upon the further theory that she was the sole devisee under the will, and I told her if she never received that money, although I knew she had not, she should pay it if she took it out of her own pocket, and so advised her." For an explanation this is certainly not a success. If true, it shows that Mrs. Rothschild did intend to make herself personally liable for the money. But the statement was made under oath, and

no reason can be imagined for swearing to such a statement, unless she had the money, and denied that, or at least doubted, whether it belonged to the estate. It is not necessary nor is it usual to state the debts in the inventory, and certainly the defendant, as an attorney, could not doubt that Mrs. Reiter had both a moral and a legal claim against the estate of Henry Rothschild for the money, and that it was unnecessary for her protection to state anything about it in the inventory. And then the statement, made from a conscientious desire to secure to plaintiff money justly due her, might result in her injury, if it can now be shown to be false; for, if the statement were true, plaintiff had no occasion to present her claim against the estate of Henry Rothschild. It is, after all, only a question as to whether there was a substantial conflict in the evidence. I think the finding in accordance with the evidence, and advise an affirmance of the judgment and order.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.