[Civ. No. 858. Fourth Appellate District.—July 13, 1931.]

JOHN L. HOLLAND, Respondent, v. BANK OF ITALY NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Executor, etc., Appellant.

John V. Morris, Lloyd Oakley Miller and Hooper & Miller for Appellant.

George Baltimore, Mark F. Jones and Goodwin J. Oppegard for Respondent.

BARNARD, P. J.—In this action the plaintiff seeks to recover $11,500 which he claims Marie Bruton Teeter was holding in trust for him. The plaintiff claims that he lived with Mrs. Teeter for some five years before her death, although they were never married, and that in September, 1927, he handed her $11,500 to keep for him. For some considerable time before her death Mrs. Teeter was running three hotels in Los Angeles. She went to a hospital for an operation in April, 1928, and died a few days later. Prior to going to the hospital she assigned certain insurance policies to the plaintiff, made her will, and purchased a cashier's check for $8000 at the Bank of Italy, which was made payable to the plaintiff or to herself, which check was found after her death in her safety deposit box in that

bank, to which box the plaintiff had no access. After the defendant was appointed executor of her last will the plaintiff filed his claim against the estate for $11,500 for money loaned to the deceased in her lifetime. The claim having been rejected, this action was filed. The complaint set up a first cause of action for $11,500 loaned to Marie Bruton Teeter at her special instance and request, and a second cause of action for $164 alleged to have been advanced to pay certain nurses during her last illness. Subsequently an amended complaint was filed setting up the same two causes of action and adding a third, in which it is alleged that "on or about September 17, 1927, one Marie Bruton Teeter became indebted to plaintiff in the sum of $11,500 for money deposited with and paid over to said Marie Bruton Teeter by plaintiff to hold in trust for him; that at the times that the aforesaid moneys were deposited with said Marie Bruton Teeter, it was agreed between her and plaintiff that she would hold said money in trust for said plaintiff and pay and redeliver the same unto him upon demand, at his option". It is then alleged that no part of said sum has been repaid; that the defendant has been appointed executor of Mrs. Teeter's estate; and "that subsequent to the death of said Marie Bruton Teeter said trust fund came into the possession of said defendant who now holds and is in possession of same".

The plaintiff was not present at the trial, but his deposition was offered. Objection having been made that the plaintiff could not testify under subdivision 3 of section 1880 of the Code of Civil Procedure, the objection was sustained as to the first two causes of action and the deposition was admitted as applying to the third cause of action. Through this deposition the plaintiff testified as follows: "Q. On the 17th day of September, 1927, did you have any business transaction with her? A. Yes. Q. What was that transaction? A. It was $11,500 that she had taken for safe-keeping for me. It involved that money. Q. And did you turn that money over to her? A. Positively yes. Q. Now, Mr. Holland, did Mrs. Teeter agree to give you back that money? A. Positively yes. Q. And when did she agree to give it back to you? A. No particular time. Q. Did she agree to pay it to you on your demand? A. Yes. Q. Did she agree to hold it for you? A. Yes." He further

testified that while she was in the hospital she said to him: " 'In case I don't get over this or don't get well or get out of it,' or something of that sort, 'you are protected by the check at the Bank of Italy.' "

On cross-examination he testified that he had won the money gambling, and that he handed the money to her that night at the apartment when no one else was present; that she told him he had better let her take it because he might gamble it all back and lose it; and that he gave it to her in paper money but he could not remember what the denominations were. He then testified: "Q. Did she give you a receipt for the money? A. She did not. Q. Did you ever ask her for a receipt for the money? A. No. Q. At the time you say you gave her this money at the apartment house on the night you have already testified to, did you tell her when you wanted the money back? A. No, I did not. Q. Did you tell her you ever wanted the money back? A. I just gave it to her and she kept the money. It was natural for me to figure that I would get it back whenever I wanted it." Immediately following this, he was asked if anything had been said between them as to when the money was to be returned. A motion to strike his answer was made at the time the deposition was taken and, at the trial, was granted by the court. Following the making of the motion the witness answered "All right. I will say that she told me 'I will give it to you whenever you need it.' " He was then asked: "Was there ever anything said as to whether or not it was to be returned at all?" The witness was instructed not to answer the question, and did not. The deposition shows that the witness was instructed by his counsel not to answer more than thirty questions, practically all of which were material, and the objections to which were later overruled by the court, but no answers had been made. Among these, he refused to answer whether he knew what she had done with the money. He did, however, testify that he did not deposit it in her bank account for her and that he did not know whether or not it was ever deposited.

The only other evidence offered by the plaintiff was the testimony of a life insurance agent, and of a trust officer of the Bank of Italy. The life insurance agent testified that while collecting some premiums from Mrs. Teeter in

the latter part of March, 1928, she requested him to change the beneficiary in certain policies, naming Jack Howard as the new beneficiary, and also told him that this party was known as John L. Holland and was going under the name of Jack Howard. In order to ascertain the insurable interest, he asked her why she wanted to do this, and "she replied she was holding over $11,000 for him and wanted to protect him in the event of her death. I immediately canvassed her for more insurance, thinking I might write more to cover up the difference and she replied that she had made—was going to make arrangements at the bank to take care of the balance." He further testified that Mrs. Teeter signed the change of beneficiary at that time, that it was forwarded to the company, and that later, Mr. Holland received $2,250 from the insurance company on these policies. The trust officer of the bank testified that a few days after Mrs. Teeter's death, he examined her safety deposit box and found therein a check for $8,000 payable to the plaintiff or to Mrs. Teeter, and that the check had been held by the executor and never paid.

As a witness for the defendant, the trust officer testified that on April 19, 1928, the morning Mrs. Teeter died, the plaintiff came to the bank and asked him about Mrs. Teeter's will telling him that his name was Jack Howard, that he was Mrs. Teeter's husband, that she was dead, and that he wanted to get such of her possessions as the bank had. Also, that he said he understood they had a will there. That he also spoke about a check "which she said she had willed to him" and he wanted to know if he could get that from her box. That about ten days after Mrs. Teeter's death he returned and asked for the insurance policies. When the trust officer asked him as to his insurable interest, he replied that the policies were assigned to him for money he had given to Mrs. Teeter, that he had given her the money at odd times and in small amounts, and did not know the total sum. The trust officer also testified that on April 4, 1928, Mrs. Teeter gave him the data for preparing her will. When he asked her as to whether she had any debts, she told him that she had taken care of a debt she owed by means of insurance policies which she had. She told him that she was going to a hospital for an operation, and stated that she wanted to make a bequest to a male friend but did

not want her relatives in the east to know about this, as they would not understand. He told her that such a clause in the will could not be kept secret. In reply to her questions as to whether he knew of any other way in which it could be taken care of, he said he knew of none except to give him the money before her death. The trust officer also testified, ''when she came back to me later in the afternoon she said she had made arrangements to take care of the bequest she had asked if she could make secretly in her will''. He further testified that on May 19, 1928, the insurance agent above referred to called on him and asked for the insurance policies, showing him an assignment signed by Mrs. Teeter, stating that the same had been on file with his company and that Mr. Howard had an insurable interest in the policies through an indebtedness. When asked where he had obtained this information, he replied that ''he had gotten it directly from Mrs. Teeter; that he had called upon her to collect some insurance premiums and that at that time she had requested that he change or have changed the beneficiaries of the policies and that he had inquired with reference to the insurable interst which the new beneficiary was to have and that she had replied it was to pay him what she owed him. I inquired further from Mr. Pries as to the full amount of the note, and he stated that she hadn't told him that, that he presumed it was in full or payment in full. Q. Did he mention any indebtedness of $11,500? A. He did not.'' The record of Mrs. Teeter's account with the bank was put in evidence, covering a period of about two years prior to her death. This shows deposits in varying small amounts, made from ten to fifteen different times a month, and made with about the same frequency prior to September 17, 1927, as from that date until the time of her death. Most of the deposits after September 17, 1927, were under $300 but a few were around $400 and $500, and one on April 9, 1928, was for $700. The record shows no deposit of $11,500 or of any other sum in excess of $700. The only assets of Mrs. Teeter coming into the hands of this defendant as executor, as shown by the record, are her bank account in the Bank of Italy, about $50 in money, and some small personal articles found in her room. The trust officer of the bank testified that he had made inquiries of all other banks in Los

Angeles, asking if they had any account, any safety deposit boxes, or any record of business with the deceased, and that he had received a negative reply from each one.

The court found that on September 17, 1927, the plaintiff deposited $11,500 in cash with Mrs. Teeter at her request, upon the express agreement that she would hold such funds in trust for the plaintiff and that she would repay or return said funds to the plaintiff on demand; that these parties had been living together for about five years as common-law husband and wife; that Mrs. Teeter died on April 19, 1928, and the defendant is the executor of her estate; that prior to her death no part of said funds had been returned by her to the plaintiff; that on March 27, 1928, in order to secure the return of part of said funds to the plaintiff, Mrs. Teeter had made the plaintiff the beneficiary in certain insurance policies, from which source the plaintiff has received $2,250; that on April 3, 1928, Mrs. Teeter purchased from the defendant bank a cashier's check for $8,000, made payable to herself or to this plaintiff, and that she deposited said check in her own private safety deposit box in said bank, where it was found after her death; that said sum of $11,500 was so intermingled with the assets of Mrs. Teeter that the said identical trust fund cannot be traced, and that all of the assets of Mrs. Teeter are now in possession of said bank as executor of her estate; that the plaintiff has demanded the cashier's check for $8,000 but delivery of the same has been refused; that the plaintiff presented to the executor of Mrs. Teeter's estate a verified claim for the obligation herein sued on; that the same was rejected on May 14, 1928; that no part of the said claim of $11,500 has been paid except the sum of $2,250, and there remains ''a balance due, owing and unpaid from the estate of Marie Bruton Teeter to the plaintiff herein in the sum of $9,250''; that the estate of Mrs. Teeter is solvent; and that the plaintiff John L. Holland is one and the same person as Jack Howard. A judgment for $9,250, with interest from the date of the presentation of the claim to the executor, followed, it being also ordered that this amount be paid to the plaintiff by the defendant ''in the due course of the administration'' of the estate of said deceased. From this judgment the defendant has appealed.

This appeal is argued by both parties almost entirely upon the question of the validity of the judgment, with respect to the third cause of action. It is appellant's contention that neither the pleadings, evidence, findings nor judgment are sufficient to sustain a recovery upon the trust fund theory. It is argued that the evidence is not sufficiently convincing to establish a trust and, further, if the trust fund existed, it has not been traced into the hands of the executor of this estate. If we assume that a trust was here established, the main question presented would be the same as that in *Byrne* v. *McGrath,* 130 Cal. 316 [80 Am. St. Rep. 127, 62 Pac. 559, 560], namely, whether the plaintiff has " 'followed the trust fund in its mutations, and have (sic) sufficiently identified it to avoid the rule laid down in *Lathrop* v. *Bampton,* 31 Cal. 17 [89 Am. Dec. 141], which places the beneficiary who is unable so to follow the trust funds in the position of a general creditor of the estate' ". In *Lathrop* v. *Bampton,* 31 Cal. 17 [89 Am. Dec. 141], the court said: "Neither the trust fund, nor any substitute for it which can be identified as such, has come into the hands of the defendant. On the contrary, the trust estate is gone, or, which amounts to the same thing, its identity is entirely lost, for it is not shown to be in the hands of the defendant in its primary condition, or that it was converted by the defendant's testator into the property or any part of it now in the defendant's possession as executor."

In *Roncelli* v. *Fugazi,* 44 Cal. App. 249 [186 Pac. 373, 374], in which it was sought to recover from an administrator a sum of money claimed to have been given to the deceased in trust for the benefit of the plaintiff's intestate, the court said: "In order that the suit might be regarded as one in equity to recover a specific trust fund, it was necessary for the plaintiff to have alleged that the identical trust property, or its substituted new form, was traceable into the estate of Fugazi, and thus into the possession of his representatives. (*McGrath* v. *Carroll,* 110 Cal. 79 [42 Pac. 466]; *Lathrop* v. *Bampton,* 31 Cal. 17 [89 Am. Dec. 141].) The complaint fails to meet this requirement. As stated in *Orcutt* v. *Gould,* 117 Cal. 315 [49 Pac. 188]: 'To justify a recovery a beneficiary must be able to follow and identify the property, either in its original or substituted form.'

And, in the case of *Lathrop* v. *Bampton, supra,* in speaking of a money trust fund, the court said: 'The identity of a trust fund consisting of money may be preserved so long as it can be followed and distinguished from all other funds, not by identifying the individual pieces or coins, but by showing a separate and independent fund or value, readily distinguishable from all other funds.'

"Where a beneficiary is unable to identify a trust fund, or to follow it through its mutations, he is placed in the position of a general creditor. (*Byrne* v. *Byrne,* 113 Cal. 294 [45 Pac. 536]; *Orcutt* v. *Gould, supra.*)"

In *Estate of Arms,* 186 Cal. 554 [199 Pac. 1053, 1055], the court said: "Where property, with the consent of the trustor, has been in that manner commingled with the property of the trustee, so that no part of it can be definitely traced and segregated from that held by the trustee, or identified as a part of any specific fund or property, none of it can be considered as the property of the trustor. 'The right of pursuing it fails when the means of ascertainment fails. This is always the case where the subject matter is turned into money and mixed and confounded in a general mass of property of the same description.' Where the identity cannot be traced the trustor 'is forced to rely upon the personal liability of the trustee. . . . He has no special lien upon the general estate of the trustee which is superior to that of any other creditor,' and his only remedy is a personal action for damages or for money had and received. (*Lathrop* v. *Bampton,* 31 Cal. 23 [89 Am. Dec. 141].) There are many other cases to the same effect. (Citing cases.) The case is different, of course, where the money or property of the trustor can be traced into a particular fund or deposit, where it still remains, though mingled with other money, or where it is used to establish a particular business which was continued in existence and is carried on by the trustee or someone taking from him with knowledge of the trust."

In *Newport* v. *Hatton,* 195 Cal. 132 [231 Pac. 987, 993], in which the plaintiff sought to recover the value of land obtained by fraud and sold, and in which the proceeds had already been distributed in the estate of the wrongdoer, the court said: "It is well settled, however, that one who claims as his own, adversely to an estate, specific property

held and claimed by an estate, cannot be called a creditor of the estate within the meaning of the probate law, and is not required to present a claim. (*Estate of Dutard,* 147 Cal. 253, 256 [81 Pac. 519].) Therefore unless it can be said that the complaint here shows on its face that the identical trust property, or its product in a new form, cannot be traced by the plaintiffs the contention of the respondents must fail. When the money or property of the trustor can be traced into a particular fund or deposit, where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust. Though the identical pieces of coin cannot be ascertained, yet if there is so much belonging to the trust in a general heap of private and trust funds, the *cestui que* trust is entitled to take so much out. (*Elizalde* v. *Elizalde,* 137 Cal. 634, 641 [66 Pac. 369, 70 Pac. 861] ; *Estate of Arms,* 186 Cal. 554, 560 [199 Pac. 1053].) ''

While conceding these general rules, the respondent relies upon the case of *Noble* v. *Noble,* 198 Cal. 129 [43 A. L. R. 1235, 243 Pac. 439, 442], as conclusive upon this appeal. We do not so regard that case. In that action, the defendants were sued as trustees and not as executors, for the purpose of recovering the proceeds of trust property which had been deposited in a bank. Certain real property had been conveyed in trust by a sister to her brother. With the sister's consent this land was later exchanged for another parcel of realty. Later, that land was sold by the brother without the consent of the sister, and the proceeds of that sale were deposited in the brother's personal account in a bank. The action was brought after the brother's death, and the facts above given were found by the trial court. On appeal, all of the evidence not being before the court, the findings of the trial court were taken as controlling. In effect, the court held that this trustee could not by the mere process of converting the trust property into money and depositing this in his personal account in a bank, relegate his trustor to the position of a general creditor of himself or of his solvent estate. In that case the trust was established and the trust property, in its substituted form, was traced into a definite fund which actually came into the hands of the defendants. The court refused

to hold that such a deposit of money in the personal account of a trustee in a bank would constitute such an intermingling of the trust funds as to obliterate the *corpus* of the trust, and quoted with approval from *Newport* v. *Hatton, supra,* as follows: " 'When the money or property of the trustor can be traced into a particular fund or deposit where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust. Though the identical pieces of coin cannot be identified yet if there is so much belonging to the trust in a heap of private and trust funds the *cestui que* trust is entitled to take so much out.' " But we see in the Noble case no authority for the proposition that such an alleged trust fund need not be traced into some particular fund or property, or in any event, traced into the hands of the defendant in some form. While it is not necessary to identify the identical coins in a mixed fund in a bank, it is as necessary to show that the trust fund has come into the possession of the defendant, as it is to establish that a trust originally existed. The complaint in the case before us recognizes such a necessity, and alleges "that subsequent to the death of said Marie Bruton Teeter said trust fund came into the possession of said defendant who now holds and is in possession of same". The trial court found that this $11,500 "was so intermingled with the assets of Mrs. Teeter that the said identical trust fund cannot be traced", and further found that "all of the assets" of Mrs. Teeter, upon her death, came into the possession of the defendant bank as the executor of her estate. If these two findings be considered as a finding that the $11,500 came into the hands of the executor, along with the assets of Mrs. Teeter, it is not supported by the evidence. The record is devoid of any evidence that the money in question was intermingled with any of her assets. The plaintiff testified that he did not know whether it was ever deposited in the bank, and he refused to answer the question whether he knew what she had done with it. There is no evidence that it was deposited in the bank and the complete statement of her bank account indicates that it never was. Aside from a small amount of personal property in her apartment and about $50 in cash, it appears that the only property coming into the possession of her executor consisted of the deposits in the

Bank of Italy and the check found in her safety deposit box. It might be said here, as was said in *Gillespie* v. *Wynn*, 65 Cal. 429 [4 Pac. 411, 412]: "Nor is it shown that the money which she received . . . ever came into the hands of defendant as such administrator, or otherwise. On the other hand, the only evidence introduced on the trial tends to prove the exact reverse." There is absolutely no evidence of any intermingling of the $11,500 with any fund she had, and none that it came into the possession of the executor in any form. The record is barren of any evidence as to what she did with that sum if, in fact, she ever received it. She may have placed it where it has not been found by her executor, she may have given it away, or she may have lost it in the manner in which the respondent acquired it. But in the absence of any evidence that it came into the hands of the appellant, it may not be reclaimed as a trust fund. In this case, as in the case of *Lathrop* v. *Bampton, supra,* the trust fund "is not shown to be in the hands of the defendant in its primary condition, or that it was converted by the defendant's testator into the property or any part of it now in the defendant's possession as executor".

To establish a trust requires clear and convincing evidence. (*Austin* v. *Wilcoxson,* 149 Cal. 24 [84 Pac. 417]; *Moulton* v. *Moulton,* 182 Cal. 185 [187 Pac. 421].) While considerable latitude must be given to a trial court in deciding such a question of fact, we hesitate to say that this requirement has been met in this case. The language used by the plaintiff in relating his version of what occurred when he handed her the money, and the meager and unsatisfactory evidence of an admission claimed to have been made by the deceased to the insurance agent, seem far from convincing. This is especially true in view of the contradictory statements made by the plaintiff, the contradictory statements made by the insurance agent, the latest statement made by the deceased to the effect that she had paid her debt by the assignment of an insurance policy, and the circumstances in connection with the $8,000 check. Plaintiff's refusal to answer questions upon the taking of his deposition, and his absence from the trial making an adequate cross-examination impossible, are more than ordinarily to be regretted in a case of this character, where

the lips of the other party to the alleged agreement are sealed by death. ▮ While the testimony of the respondent was admissible, in spite of section 1880 of the Code of Civil Procedure, in an action to establish a trust, this is but an added reason why the usual rules for establishing a trust should be fully applied. Nor do we read the Noble case as doing away with such general rules. To hold that it is not necessary to identify particular coins in a composite bank account, when a trust is established and its proceeds are traced into such an account, is far from holding that clear and convincing evidence is not necessary to establish a trust, and that it is not necessary to trace the trust funds into some fund or property which has come into the hands of a defendant.

▮ Not only do we think the findings in this case are not supported by the evidence, but the judgment does not follow the findings as to the establishment of a trust. The judgment is against the executor as such, and not as a trustee, and it further provides that it shall be payable in the course of administration. If a trust was established and traced into the hands of the defendant, then the trust fund is no part of the estate. And the conclusions of law after stating that the claim was presented to the executor and rejected, are to the effect that the estate is "indebted" to the plaintiff, and that the plaintiff is entitled to a judgment against the defendant "as executor of the estate of Marie Bruton Teeter, deceased", with interest from date of presentation of the claim; and that the amount "so found due to the plaintiff herein as aforesaid" be paid to the plaintiff by the defendant in the due course of the administration of said estate.

▮ Respondent argues that even though it be held that the evidence and findings are not sufficient to establish a trust as alleged in the third cause of action, they are sufficient to establish a loan as alleged in the first cause of action. While it is conceded that the plaintiff's testimony may not be considered in that connection, it is contended that the testimony of the insurance agent as to the statement made to him by the deceased, together with the assignment of the insurance policies and the finding of the cashier's check in the safety deposit box, is sufficient to make out a *prima facie* case on the first cause of action.

Opposed to this is the other evidence, that on September 17, 1927, Mrs. Teeter had about $11,000 in her savings account, indicating no need for a loan; that she tried to find a way to make a bequest to a male friend in a manner that should not become known; that she secured a cashier's check payable either to herself or to the respondent and retained this in her possession; that the insurance agent's first statement to the banker was that she had told him that the assignment of the insurance policies was to pay what she owed to the new beneficiary; that the respondent told the banker that the insurance policies were assigned to him for money he had given her at odd times in small amounts, the total of which was unknown to him; and that she told the banker, when making her will, that she had taken care of her debt by means of her insurance policies. Under the circumstances, it would be a close question, at best, whether the evidence is sufficient to sustain such a finding had it been made. But the fact remains that the court made no such findings. There is no finding that any money was loaned to her, and no finding that the estate is indebted to the plaintiff. The conclusion of law that the estate is indebted to the plaintiff is drawn from the findings which, though somewhat uncertain, purport only to find that the money was delivered to Mrs. Teeter in trust. Nor would we care to make such a finding when the evidence is so close, and when, as we think, the preponderance thereof is the other way. Viewed from the standpoint of either cause of action, we think this case should go back for a new trial.

While it is settled that section 1880 of the Code of Civil Procedure has no application where a trust is sought to be established, and while equity may give relief in a proper case, the claim of a trust fund should not be allowed merely for the purpose of circumventing the provisions of section 1880, nor unless a case is presented which clearly comes within the established rules.

The judgment is reversed and the case remanded for a new trial.

Marks, J., and Griffin, J., *pro tem*, concurred.