[Civ. No. 6000. Third Appellate District.—March 1, 1938.]

ANDREW BACK, Respondent, v. T. S. FARNSWORTH, as Administrator, etc., et al., Appellants.

Martin Forrest, Arthur W. Kennedy, Marshall Stimson, George R. Robbins and Noel Edwards for Appellants.

Saul S. Klein and Emanuel & Klein for Respondent.

THOMPSON, J.—Upon appropriate pleadings the trial court decreed that the appellants held a Los Angeles lot and dwelling house together with a sum of money collected as rental therefrom in trust for the respondent. It was held the facts involved establish a resulting trust in favor of the respondent. From that decree this appeal was perfected.

It is contended the findings and judgment are not supported by the evidence for the reason that the facts related by the respondent's witnesses are inherently improbable; that the original trustee of the property held only a community interest with her husband in the house and lot, and that she therefore could not lawfully devise by her will his portion of the property, and that the money judgment for accumulated rental was erroneously rendered for the reason that no claim therefor was previously presented to the estate of either Mr. or Mrs. Reiber, deceased.

Mary and Philip Reiber were husband and wife. The respondent, who was then a married man, was their very close friend. They all resided in Los Angeles and they belonged to the same nationality. Neither of them was acquainted with legal proceedings or the formal requirements of transferring title to real property. The respondent was not well educated and expressed himself in English with great difficulty. Mrs. Reiber was about eighty years of age and moved about with difficulty. The respondent was a frequent visitor in the Reiber household and performed many courtesies for the benefit and welfare of Mrs. Reiber, who held him in high esteem. January 30, 1905, lot 187 of the Ford tract

of the city of Los Angeles, together with the dwelling house situated thereon, was, for a valuable consideration, deeded by Laura and David M. Young, husband and wife, to Mary Reiber. It was worth about $5,000. December 1, 1921, Mrs, Reiber agreed to sell the house and lot to the respondent for $4,200. He then paid her the sum of $2,000 on the purchase price thereof. A written agreement of sale of the property was executed and delivered to the respondent on the last-mentioned date. Philip Reiber also signed that contract with his wife. The contract specified as consideration for the sale the sum of $2,276.93, which was the unpaid portion of the purchase price of the property, plus some expenses incident to the transaction. This balance was to be paid in equal instalments of $30 on the first of each and every month, together with 7 per cent interest per annum on all deferred payments, until the entire amount was fully satisfied. The purchaser agreed to pay all assessments and taxes levied against the property and to keep it in good repair. The respondent took and remained in possession of the property for about ten years, but was very slow in making his payments thereon. During that time, however, he paid all taxes and assessments, together with the sum of $1268.41 on the unpaid principal and also interest in the aggregate sum of $681.94. By March 14, 1931, he had reduced the unpaid purchase price of the property to $1,031.54. In the meantime he remained on the best of terms with Mr. and Mrs. Reiber, who apparently never complained of his failure to meet the deferred payments. The respondent was embarrassed by that and other indebtedness. Mrs. Reiber agreed to take and hold title to the property in trust for the respondent and apply the rental thereof to the payment of the deferred instalments on the purchase price of the property. In that regard, Mr. Back testified that on March 14, 1931:

"I went out there and told them I couldn't make a payment,—I told them I can't make a payment on the house, and Mrs. Reiber and Mr. Reiber both was there, and they both was telling me 'Don't worry about the house.' Mrs. Reiber says 'I can take the house over, and collect the rent, and that will be paid on the payments on the house.' She says she don't want the house. She says that she was going to hold the house for me, but she says that she don't want my house. She says that she want to collect the rent, and

that the rent would be paid on the house, and for me to give her a quitclaim deed, so nobody else could put some kind of a claim on it, and she was telling me that she would like to have me give her a quitclaim deed for it, and she would like to have it all in her name, and she would hold the house for me.''

Pursuant to the foregoing understanding, the respondent executed and delivered to Mrs. Reiber a quitclaim deed to the premises. Later he moved to another residence. Thereafter the respondent paid taxes on the property amounting to $97.42, and street assessments on the property in the sum of $53.92. He also made repairs on the house and insured the building in his own name. Mr. Joseph Herrick testified to a conversation, in which he participated, between Mr. and Mrs. Reiber and the respondent early in 1932. He said that both Mr. and Mrs. Reiber confirmed the fact that Mrs. Reiber was holding the property in trust for the respondent, and that she was applying the rent which was collected therefrom to the payment of deferred instalments on the contract of purchase. The property was actually rented during much of the time after the respondent surrendered possession of it. In March, 1932, Mary Reiber executed her will, bequeathing to the respondent whatever sum remained unpaid on his contract to purchase the house and lot. That provision of the will reads:

"Item (K) To my friend Andrew Bak, of 544 E. 53rd Str. Los Angeles, Calif., whatever amount, if any, may be due on a house and lot which he purchased from me.''

This provision of the will confirms the theory that Mrs. Reiber was holding the property in trust for the respondent. The will was made about a year after the testatrix took the quitclaim deed from the respondent. At the time the deed was executed, he owed her about $1,031. It is evident Mrs. Reiber assumed the purchase price might be fully paid by applying before her death occurred the rental which she was collecting. In that event the above-quoted clause of the will would become inoperative, and the bequest would lapse.

In the summer of 1933, Mrs. Reiber told the respondent she considered that his contract to purchase the property was fulfilled; that the purchase price had been fully paid and that she was ready to give to him ''the deed and all the papers'' to convey to him clear title. Accordingly she

went with the respondent to her safe-deposit box in the Security-First National Bank of Los Angeles and delivered to him her original deed from Mr. and Mrs. Young, a certificate of title to the property issued by the Title Insurance and Trust Company, an insurance policy for $4,000 on the dwelling house in favor of Andrew Back, with a rider attached thereto, naming Mrs. Reiber as mortgagee of the premises, and entitling her to payment in case of fire as her interest might appear. Mrs. Reiber also returned to the respondent the original contract of sale of the property. She then told him that any time he would present to her a deed to the property she would execute it. He, however, failed to procure the making of the deed, and Mrs. Reiber died within five months thereafter.

There is no question regarding the actual delivery of those instruments to the respondent. Five disinterested witnesses testified that Mary Reiber thereafter stated in their presence that she had "deeded the property back" to the respondent, and that she had given him all the papers with relation thereto. It is of little importance that the respondent said he thought the papers were taken from the safe-deposit box and given to him in July or August, 1933, and that the bank records show the last time Mary Reiber had access to that box was May 27, 1933. The witness said he was uncertain of the exact date. He thought it was in July or August. Two years had elapsed since that event. It is not strange that the transaction may have occurred a month earlier than he thought it did. There is no question that she gave him the documents at some time for they were in his possession.

Mrs. Reiber died October 7, 1933. Upon proceedings duly had her will was admitted to probate and the defendant, T. S. Farnsworth, was appointed and qualified as administrator with the will annexed of her estate. The house and lot were included in the inventory as the property of her estate. Soon thereafter the respondent demanded a deed to the property. Mr. Reiber assured him that the property belonged to him, but said that the attorney would not then agree to a conveyance. In April, 1935, Philip Reiber died intestate and the defendant Ben H. Brown was appointed administrator of his estate. A demand for conveyance of the property was made and refused.

This suit was promptly commenced in June, 1935, against the representatives of the estates of both Mary and Philip Reiber, to declare a resulting trust in the house and lot and in the money collected as rent from the property after the death of Mrs. Reiber for the benefit of the respondent. The administrator of each estate separately answered the complaint, denying the material allegations thereof. It was also affirmatively alleged the claim to title of the land and money was waived by failure to previously present to the estates verified claims therefor as provided by section 707 of the Probate Code. Upon trial of the cause the court adopted findings favorable to the respondent upon every essential issue. A judgment was accordingly rendered in which it was held that the house and lot in question is the property of the respondent free from all encumbrance; that it is held in trust for him by the representatives of the estates of Mary and Philip Reiber, and that respondent recover from the estate of Mary Reiber the sum of $469.35, in due course of administration, being the rent collected from his property and retained after the death of Mrs. Reiber, and the further sum of $62.70 from the estate of Philip Reiber, being rent collected from the property and retained by Mr. Reiber prior to his death. From that judgment this appeal was perfected.

After a careful reading of the transcript on appeal, we are satisfied every essential finding of the court necessary to uphold the judgment is adequately supported by the evidence, and that the evidence of a resulting trust in favor of the respondent is not inherently improbable. Indeed, in view of the circumstances of the case, including the lack of knowledge of legal proceedings necessary to the conveyance on the part of the respective parties and considering the friendly relations existing between them, together with the age of Mrs. Reiber, it is reasonable to believe that she held the property in trust for the respondent. It is unreasonable to assume that the respondent would voluntarily give up title to property which cost him $4,200, upon which he had paid the entire purchase price except the sum of about $1,000, and that he would thereafter make repairs on the building, insure the premises and pay taxes and street assessments, if he claimed no interest therein. The findings in that regard are in accordance with the evidence and with sound reason.

With respect to rejecting evidence on the ground that it is inherently improbable, it is said in *Powell* v. *Powell*, 40 Cal. App. 155, 158 [180 Pac. 346]:

"To warrant it in determining there is no substantial evidence because of inherent improbability, there must exist either a physical impossibility of the evidence being true, or such a state of facts so clearly apparent that nothing need be assumed nor any inferences drawn to convince the ordinary mind of the falsity of the story."

No such condition exists in the present case as is suggested in the preceding quotation. We are of the opinion the evidence should not be rejected on the ground that it is inherently improbable.

█ The finding to the effect that Mary Reiber was the sole owner of the house and lot in question prior to the time when the respondent's purchase price therefor was fully paid to her, and that her husband, Philip Reiber, had no interest therein, is adequately supported by the evidence. It is uncontradicted that this property was deeded to her by Mr. and Mrs. Young, January 30, 1905. That deed was recorded at the request of the grantee. In her negotiations with the respondent for the sale of the property Mrs. Reiber treated it as her own separate property. It was assessed in her own name. When she executed her will she bequeathed to the respondent whatever might then remain unpaid on "a house and lot which he purchased *from me*". After the contract of purchase was executed the dwelling house was insured. In that policy Mrs. Reiber only was named as the "mortgagee". There is no evidence that Philip Reiber ever owned an interest in the property.

All property conveyed after May 18, 1889, by a written instrument to a married woman in her name only is presumed to be her separate property. (Sec. 164, Civ. Code; *Thompson* v. *Davis*, 172 Cal. 491 [157 Pac. 595]; 5 Cal. Jur. 317, sec. 23.)

█ The record contains a colloquy which occurred between respective counsel during the trial with respect to the question as to whether the house and lot were the community property of Mr. and Mrs. Reiber. We are of the opinion it does not constitute a definite stipulation which is binding upon the court's finding in that regard. It is true that Mr. Saul Klein, attorney for the respondent, did unwittingly ask adverse counsel if he would stipulate that an

undivided one-half interest in the property belonged to Philip Reiber. Mr. Edwards, attorney for appellant administrator, replied that it was community property, but attached a condition to his answer. The question raised by that condition was not settled in the controversy. In spite of the fact that Mr. Klein asked adverse counsel if he would so stipulate, he failed to affirmatively assent to that inquiry as a fact. Fairly construed, we are of the opinion the controversy did not amount to a definite stipulation.

It is true that a stipulation of respective counsel with respect to a valid issue in a case may be treated by the court as evidence upon which a finding may be adequately supported. (2 Jones Com. on Evidence, 2d ed., p. 1759, secs. 955, 956.) But when the stipulation is clearly inadvertently made in conflict with a party's theory of his case and opposed to his absolute rights, the stipulation may be disregarded when there is substantial proof to the contrary. In the present case evidence was adduced almost conclusive of the fact that Mary Reiber owned the property separately from her husband. The court had a right to adopt a finding to that effect, which it did. That finding is adequately supported by the evidence and we are of the opinion it may not be disturbed on appeal.

The appellants were not prejudiced by the rejecting of proffered evidence at the trial. The evidence to which objections were sustained was merely cumulative. The rulings of the court in that regard were therefore harmless.

It was not necessary for the respondent to first file a claim against the estate of Mary or Philip Reiber, deceased, as a prerequisite to maintaining this action to establish a resulting trust in the real property or rental therefrom which was collected by them. This is a suit to recover specific property alleged to have been held by the deceased persons in trust for the respondent. Where the recovery of specific property is sought on the ground that it is impressed with a trust for the benefit of the person claiming it, and the particular property is identified the issue does not involve an indebtedness of the estate, but, on the contrary, it is an asserted demand for delivery of property which does not belong to the estate, and the presenting of a claim is, under the provisions of section 716 of the Probate Code, therefore, not a prerequisite to the maintenance of the suit. This is

true even though the complaint seeks a judgment in the alternative for the property or its value. (*Estate of Dutard,* 147 Cal. 253 [81 Pac. 519] ; *Swanson* v. *Siem,* 124 Cal. App. 519, 526 [12 Pac. (2d) 1053] ; *Holland* v. *Bank of Italy Nat. T. & S. Assn.,* 115 Cal. App. 472, 480 [1 Pac. (2d) 1031] ; 11A Cal. Jur. 710, secs. 504, 505; 3 Bancroft's Prob. Prac. 1387, sec. 777.) With respect to a suit to establish a trust in specific funds, it is said in the Holland case, *supra:*

"Unless it can be said that the complaint here shows on its face that the identical trust property, or its product in a new form, cannot be traced by the plaintiffs the contention of the respondents must fail. When the money or property of the trustor can be traced into a particular fund or deposit, where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust."

█ In the present case the complaint clearly alleges a resulting trust in favor of the respondent to both the real property and the rental collected therefrom by both decedents. It also asks for an accounting to determine the exact amount of rental due from each of them. The identity of the real property is conclusively established. No claim for the real property was required to be filed. With respect to the money collected by each decedent from the real property, we are pointed to no evidence indicating that the exact sums for which judgment was rendered for rental against the representatives of those estates may not be adequately traced and identified. In support of the judgment for such sums, we must therefore assume that those funds were also sufficiently identified.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1938.