[Sac. No. 1272. In Bank.—March 20, 1906.]

## AMANDA P. AUSTIN, Appellant, v. GEORGE H. WIL-COXSON, Respondent.

TRUST-FUND — EQUITY — PLEADING — ACTION AT LAW.—Though equity may enforce a trust against the executor of a deceased trustee, yet a complaint against an executor not as such, but individually, alleging that a sum of money was delivered by one granduncle of plaintiff to another, to be held in trust for her, and to be paid to her at the death of the latter, and that after his death defendant took possession of the money and withheld it, and refused to deliver it to plaintiff upon demand, does not state a cause of action in equity to enforce a trust, but only shows a cause of action at law, which may indifferently be called one in trover, in *assumpsit,* or for money had and received.

ID.—TRUST IN PERSONALTY—PAROL EVIDENCE—ORAL DECLARATIONS— CAUTION.—Though a trust in personal property may be created, declared, or admitted verbally, and the oral declarations of the alleged trustee are admissible in evidence for that purpose, yet such evidence must be clear and unequivocal; and where there are no acts of the trustee in corroboration of such oral declarations, evidence of them must be viewed with caution, and mere evidence of the oral declarations of a deceased person, to establish a trust against him which in general cannot be contradicted, must be deemed in its nature the weakest and most unsatisfactory.

ID.—SUPPORT OF ADVERSE FINDING.—Where the oral declarations proved were contradictory, or inherently improbable, or conflicted with proved or admitted facts and with the admissible evidence of the books of account of the deceased granduncle alleged to have created the trust, showing that he had no such sum of money in his possession as that claimed to have been deposited in trust, a finding against the existence of the trust is sufficiently supported.

ID.—ESTOPPEL OF ALLEGED TRUSTEE—ABSENCE OF PLEADING—RECOVERY FOR SERVICES—PREJUDICE NOT SHOWN.—Where no facts showing an estoppel against the alleged trustee were pleaded, and the plaintiff had recovered against his estate for the value of all services rendered to him, and she is not shown to have been prejudiced in any way by such statement as he may have made to her while living with him, her contention that his declarations and acts are sufficient to raise an estoppel against him in her favor is not meritorious.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. G. M. Nichol, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, and Grove L. Johnson, for Appellant.

Clinton L. White, and Arthur M. Seymour, for Respondent.

HENSHAW, J.—Plaintiff's complaint alleged that Jackson Wilcoxson and Jefferson Wilcoxson were her granduncles; that on or about the tenth day of March, 1885, Jackson Wilcoxson delivered to Jefferson Wilcoxson the sum of seventy-five thousand dollars, to be held in trust for, and to be paid to, plaintiff at the time of the death of Jefferson Wilcoxson; that Jefferson Wilcoxson accepted the trust and took possession of the seventy-five thousand dollars; that Jefferson Wilcoxson died in the city and county of Sacramento on the eighth day of April, 1898; that he did not deliver to plaintiff in his lifetime, nor at his death, the sum of seventy-five thousand dollars; that immediately after his death the defendant George H. Wilcoxson "took possession of said sum of $75,000 held in trust for plaintiff as aforesaid, and ever since has withheld and now withholds the sum from the plaintiff"; that after demand defendant has refused and still refuses to deliver the money to plaintiff. Plaintiff prayed judgment that defendant deliver to her the sum of seventy-five thousand dollars, and that in the mean time he be restrained from disposing of any part of it. Defendant answered first by denial. For a second defense he alleged that Jefferson Wilcoxson died leaving a last will and testament by which he bequeathed all of his estate; that defendant was named executor therein and thereunder, and was appointed, qualified, and acted as executor; that as executor he proceeded to take possession of all the property, real and personal, belonging to the estate, and that he took possession of these properties in no other way than as executor. The moneys which plaintiff seeks to recover defendant personally makes no claim to, and has not converted to his own use, but has taken and held the same only in his capacity as executor as money belonging to the estate of Jefferson Wilcoxson, deceased; that he did not know and had no means of knowing that plaintiff laid claim to the sum of seventy-five thousand dollars, or any other sum, as having been held in trust by his testator for her benefit until the eighteenth day of Janu-

ary, 1900, when for the first time plaintiff notified defendant of her claim, and demanded of him the payment of the said sum of seventy-five thousand dollars. Upon this defendant then proceeds to set forth matters from which he contends that plaintiff is estopped by her conduct from asserting a claim to this money, matters which need not here be set forth with any particularity. Upon the issues thus joined trial was had before the court, which found against the allegations of plaintiff's complaint and affirmatively in favor of defendant's plea in estoppel, and rendered its judgment accordingly. Plaintiff appeals, and upon her appeal urges that the complaint is "purely a bill in equity to have declared and enforced a trust," and that it was the duty of the court therefore to have found on all of the issues by special findings, whereas the findings in fact made were that "the allegations of the second, third and sixth subdivisions of the amended complaint are not, nor are any of them, true, and the allegations of the second subdivision of the answer of the defendant are true." We think, however, that plaintiff misconceives the legal effect of her complaint. It is not an action to declare and enforce a trust. She sues at law to recover moneys which she alleges have come into the hands of the defendant and which upon her demand he has refused to turn over to her. Her action may indifferently be called one in trover, in *assumpsit,* or for money had and received. It is true that to make out her title to the money she alleges that it was given by one of her granduncles to another granduncle in trust for her, but the allegation as to this defendant's connection with the fund is simply that he "took possession of it" and refuses after demand to pay it over. The same allegation would be good against a thief who had actually stolen the money, and assuredly it cannot be said that a demand upon one whom it is alleged has wrongfully taken and wrongfully holds money constitutes an equitable action to enforce a trust. The enforcement of a trust in equity has in contemplation the terms, conduct, and management of the trust, the settlement of the trustee's accounts, compensation to the trustee, the order of payment over and his discharge from his trusteeship. None of these matters is here in contemplation. It is not even charged that the defendant obtained and holds the money as executor of the estate of his

deceased uncle. Nor is its recovery in any way to be had out of the funds of the estate. The demand is for a personal judgment against the defendant in his individual capacity. Equity will, of course, enforce a trust against the executor of the deceased trustee. (*Walkerly* v. *Bacon's Executors*, 85 Cal. 137, [24 Pac. 638]; *McGrath* v. *Carroll*, 110 Cal. 79, [42 Pac. 466]; *Byrne* v. *Byrne*, 113 Cal. 291, [45 Pac. 536]), but such is not the action here brought. The findings which the court made are supported by the decisions of this court from the cases of *McEwen* v. *Johnson*, 7 Cal. 258, uniformly down to the case of *McLennan* v. *Wilcox*, 126 Cal. 51, [58 Pac. 305].

The principal point presented in argument upon this appeal, however, is that the evidence is insufficient to sustain the findings of the court to the effect that Jackson Wilcoxson did not deliver to Jefferson Wilcoxson the sum of seventy-five thousand dollars to be held in trust and to be paid to plaintiff at the time of the death of Jefferson Wilcoxson, and that Jefferson Wilcoxson did not accept in trust, and did not take and hold in possession, the sum of seventy-five thousand dollars, or any other sum in trust for the plaintiff. A consideration of this proposition necessitates the following statement of facts: The deceased Jefferson Wilcoxson was a very wealthy bachelor. Upon his death he left an estate of a value exceeding one million dollars. Over two hundred thousand dollars of this was personal property, the principal part of which was money. In his safe at the time of his death were found moneys to the amount of sixty-odd thousand dollars, partly in paper money, partly in coin, the packages wrapped and labeled with the amount of moneys which they contained and the deceased's name, all in his own handwriting. In another part of the safe was an envelope on the outside of which in the handwriting of Jefferson Wilcoxson was written "1,000 shares Amanda P. Austin." Inside of the envelope was found a certificate for a thousand shares of stock in a mining company issued to Jefferson Wilcoxson, and indorsed by him to Amanda P. Austin. There were certificates of deposit also found in the safe. These certificates of deposit bore no *indicia* of a trust, but were one and all in favor of Jefferson Wilcoxson. The plaintiff, as has been said, was the grandniece of Jefferson Wilcoxson and lived

with him much as though she were his own daughter. It is contended that in so living with him and devoting herself to him the plaintiff made large personal sacrifices, forbore entering into the marriage state, and in all ways effaced herself to the comfort and happiness of her uncle. From witnesses testifying to the declarations which Jefferson Wilcoxson made to them in his lifetime the record abounds with expressions of his affection for the plaintiff; that she was a noble woman; that she was kinder to him than a daughter would have been, with assurances that he proposed to provide bountifully for her in his will; that he would leave her a rich woman, and much more to this effect. It appears further that upon Wilcoxson's death, provision to the satisfaction of this niece not having been made, she presented a claim against his estate for the value of her services rendered to him, and upon this claim prosecuted a suit in the superior court to judgment in the sum of twenty thousand dollars, and this judgment, with interest and costs, was paid to her in full by the estate. Thus whatever may have been her claim against the estate of Jefferson Wilcoxson for her devotion, her self-denial, and her sacrifices, it has received a money value at the instance of her own litigation and the amount has been paid to her. In the present litigation, therefore, the evidence of promises and assurances of the deceased as to what he would do for her out of his own estate are of no importance, weight, or value. This action is strictly brought and a recovery strictly sought upon the allegation that Jackson Wilcoxson delivered to Jefferson Wilcoxson, and Jefferson Wilcoxson received in trust for plaintiff, seventy-five thousand dollars, which seventy-five thousand dollars Jefferson Wilcoxson has never paid over to plaintiff and which seventy-five thousand dollars this defendant took possession of and now retains. While plaintiff presented her claim against the estate of Jefferson Wilcoxson for the value of her services, and while she testifies that during his lifetime Jefferson Wilcoxson repeatedly told her that her uncle Jackson had left a large sum of money with him in trust for her and that the money was in his safe, she never presented any claim against the estate for this money. In avoidance of the principle declared in *Lathrop* v. *Bampton,* 31 Cal. 17, [89 Am. Dec. 141], and the numerous cases which have fol-

lowed and upheld it, plaintiff endeavors to earmark the trust-fund, and to this end the testimony is directed to show that the seventy-five thousand dollars alleged to have been left in trust by Jackson Wilcoxson was the money actually found in Jefferson's safe at the time of his death.

With this statement of the surrounding facts and circumstances, we are brought to a consideration of the testimony by which it is sought to establish the trust. As to this testimony, it may be said in general that it consists wholly of evidence given by witnesses of the declarations made by Jefferson Wilcoxson during his lifetime. There is no other evidence of it whatsoever. There is no writing of Jefferson Wilcoxson, no memorandum, no acts of his in support of the trust, other than these oral declarations testified to by the witnesses. The trust sought to be established being one in personalty, of course, the oral declarations of Jefferson Wilcoxson are permissible in evidence for this purpose. (Civ. Code, sec. 2222.) Trusts in personalty may be created, declared, or admitted verbally, and may be proved by parol evidence, although, as the authorities uniformly unite in declaring, such evidence must be clear and unequivocal. (*Silvey* v. *Hodgdon,* 52 Cal. 363; *Sheehan* v. *Sullivan,* 126 Cal. 189, [58 Pac. 543]; *Barker* v. *Hurley,* 132 Cal. 21, [63 Pac. 1071]; 3 Pomeroy's Equity Jurisprudence, sec. 1008; 1 Perry on Trusts, sec. 77.) In considering what evidence may be regarded as clear and convincing in the establishment of such a trust, it must be borne in mind that the code enjoins caution in the reception of evidence of the oral admissions of a person (Code Civ. Proc. sec. 2061), even when that person is living. When he is dead, and when, from the very nature of the evidence offered, it is impossible generally to contradict the witnesses who testify, reason suggests an even greater degree of caution, and it is not stating it too strongly to say that evidence so given under such circumstances must appear to any court to be in its nature the weakest and most unsatisfactory. (*Mattingly* v. *Pennie,* 105 Cal. 514, [39 Pac. 200, 45 Am. St. Rep. 87]; *Davis* v. *Davis,* 26 Cal. 23, [85 Am. Dec. 157]; *Byrne* v. *Byrne,* 113 Cal. 295, [45 Pac. 536].)

It would be unprofitable to review at length the testimony of plaintiff's witnesses offered to establish this trust by the parol admissions of the deceased, but in general it may be

said that the testimony of some was inherently improbable, the testimony of others conflicted either with proved or admitted facts, or with the evidence of other witnesses testifying upon the same matter. The testimony of one of the witnesses fixes the date of the gift by Jackson as years before his death. The testimony of another witness fixes it as a gift by check a short time before his death. The testimony of still another witness would fix it as money in the safe of Jackson Wilcoxson at the time of his death, which money Jefferson Wilcoxson took from the safe, which also contained a letter to plaintiff from Jackson Wilcoxson declaring the gift made to her. The character and personnel of some of the witnesses offering this testimony, who are shown to have been comparative strangers to the deceased, might likewise of itself have caused doubt in the mind of the trial judge. From the nature of this evidence it was impossible, as has been said, to contradict all the alleged admissions, but wherever a matter was testified to as a fact, the defense experienced little difficulty in showing the non-existence of the fact. For example, as to the alleged declaration that the seventy-five thousand dollars was in the safe of Jackson Wilcoxson at the time of his death, and was upon his deathbed given over to his brother Jefferson with the letter to the plaintiff, it is shown by disinterested and indisputable testimony that there was no money and no letter in the safe when it was opened. So as to the check, it was shown by the banks with which Jackson Wilcoxson did business and by his own books of account that no such check had ever been given. And so generally the defense undertook and successfully carried the burden of showing by the banks and by the books of Jackson Wilcoxson, which seemed to have been carefully kept in his own handwriting, not only that he did not ever give such a sum to his brother, but that the largest sum of money he ever had at any one time in the bank was fifteen thousand dollars; that he frequently overdrew his bank account, and that during the last year of his life, at the time when by the consensus of the testimony of plaintiff's witnesses the money was paid to Jefferson Wilcoxson, his account was overdrawn, and at the time of his death he owed a balance of $1,185. Herein it is insisted by plaintiff that the court erred in admitting in evidence the cash-book and the two ledgers kept by Jackson

Wilcoxson, but it was shown that the books were kept in the regular course of business by one who had personal knowledge of the subject-matter entered in the books, occupying a position such as to exclude all presumption of his having any interest to misrepresent or falsify them. The entries were contemporaneous with the facts which they represented; proof was made that they were in the handwriting of Jackson Wilcoxson, and it was an admitted fact, of course, that Jackson Wilcoxson was dead at the time of the trial. It may not be doubted that the books were admissible in evidence. (*Sill* v. *Reese,* 47 Cal. 294; *Banning* v. *Marleau,* 121 Cal. 240, [53 Pac. 692].) It thus appears that the court's findings to the effect that the seventy-five thousand dollars was never paid by Jackson Wilcoxson to Jefferson Wilcoxson in trust, nor received by the latter in trust, is supported by the evidence. Plaintiff's contention that, even if this be so, Jefferson Wilcoxson's declarations and conduct are sufficient to raise an estoppel against him in favor of this plaintiff rests upon no meritorious ground. In the first place, plaintiff has failed to plead an estoppel, which, relied upon, should be pleaded if possible, and it was certainly possible here to do so. In the second place, bearing in mind that she had recovered in full for all her services to her uncle in the suit which she had instituted against his estate for that purpose, it is not made to appear that she was in any way prejudiced by such statements as her uncle may have made. Those statements neither increased nor decreased the amount of her recovery, nor in any way impaired her rights in the commencement and prosecution of the present litigation. In no way does it appear that she was prompted to act or to refrain from acting to her own detriment.

What has been said renders unnecessary a consideration of the court's findings upon the plea of estoppel raised by defendant against plaintiff. The rulings of the court in permitting certain questions to be asked of plaintiff on cross-examination are objected to. Plaintiff was not only a party in interest, but, as a witness in her own behalf, offered testimony as to the oral admissions of her uncle in her favor. A wide latitude of cross-examination was permissible under these circumstances and a proper latitude was not exceeded. In striking out the testimony of the witness Kate Stevens as to the friendly relations existing between Harrison Wilcoxson's

daughters and Jefferson Wilcoxson, the ruling, if error, was on an absolutely immaterial matter. The same may be said of the court's order in admitting in evidence an entry made by Jefferson Wilcoxson in his diary.

For the foregoing reasons the judgment and order appealed from are affirmed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.