[Civ. No. 4689. First Appellate District, Division Two.—October 19, 1923.]

S. J. KORNBLUM et al., Appellants, v. BANK OF ITALY (a Corporation), Respondent.

[1] CONTRACTS—SHIPMENT OF GRAPES—PAYMENT BY BANK—CONVERSION—WRITTEN INSTRUCTIONS—PAROL EVIDENCE OF CONVERSATION—ADMISSIBILITY OF.—Where a purchaser of grapes that were about to be shipped east deposited a sum of money with a bank

---

1. Parol evidence to add to or vary writing, notes, 56 **Am. St. Rep.** 659; 17 **L. R. A.** 270.

and gave the latter written instructions to pay certain sums to various firms and individuals upon presentation of bills of lading for fresh grapes, there being no acceptance in writing by the bank of the terms of the instructions, what was said by the purchaser and by the representative of the bank at the time said written instructions were given was admissible in an action by the purchaser against the bank for conversion of a stated sum, representing an alleged overpayment, the writing being but a part of the parol evidence going to make up the agreement between the parties.

[2] ID.—ALLEGED CONVERSION—PAYMENT OF SPECIFIC SUM—INSTRUCTIONS—FINDING—EVIDENCE.—In an action by purchasers of grapes against a bank for conversion of a specific sum of money, where it appeared that the bank was given written instructions to pay stated amounts to vendors of grapes out of an amount deposited with it by said purchasers, a finding declaring that a specific sum, which was greater than the sum mentioned in the written instructions, was paid by said bank to a vendor of grapes in accordance with said written instructions and the further instructions of the purchasers, was sufficiently supported by the evidence which showed that the amount payable to each vendor could not be ascertained until each carload was weighed, that the amount mentioned in the instructions was just the probable amount stated by the agent of the purchasers, and that the expenditures actually made by the bank amounted to a smaller sum than the amount deposited with it.

[3] ID.—MEASURE OF DAMAGES.—In such action, if the bank received more cars from one vendor of grapes than that vendor's proportion, that fact alone would not warrant a judgment against the bank for the price paid for such excess, but the purchasers' right to damages would be "the amount which will compensate them for all the detriment caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

APPEAL from a judgment of the Superior Court of Fresno County.   S. L. Strother, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Jack Greenberg, Everts, Ewing & Wild and C. A. Tuttle for Appellants.

Harris, Johnson, Willey & Griffith for Respondent.

STURTEVANT, J.—The plaintiffs commenced an action to recover a judgment against the defendant for $2,849.60

alleged to have been converted. The trial court rendered
a judgment in favor of the defendant and the plaintiffs
have appealed. The trial court, according to the appellants, made two errors. The first alleged error is that it
received oral evidence to vary the terms of a written instrument, and the second error is that one of the principal
findings is not supported by the evidence. As the · case
was presented in the trial court, and as it is presented in
this court, it is difficult to treat the two points separately.

On the trial of the case the plaintiffs produced the deposition of one of the plaintiffs, S. J. Kornblum. In that
deposition the witness deposed as follows: That his name
was S. J. Kornblum, and that he resided at 426 East Third
Street, Brooklyn, New York. He was in Fresno October
26, 1920, and during that month and the two previous
months he had business dealings with the branch of the
Bank of Italy located at Fresno. On October 26th the
witness went to Mr. Heaton, the manager of the branch
bank, and told him that he had negotiated with several
merchants in Fresno for some grapes that were about to
be shipped. The conversation took place in Mr. Heaton's
office. The witness told Mr. Heaton that the grapes were
about to be shipped but that he had to go back east, and
that it was urgent for him to go home, and that he wanted
to be protected so that they would not ship him any more
grapes than he had bought, and he wanted to leave $30,000
in Fresno. He drew a check and deposited it with Mr.
Heaton for $30,000. Mr. Heaton asked him how the bank
was going to pay—supposing the stuff was not good. And
the witness answered that the buyers had to take these
chances whether the stuff was good or not, but to pay
simply on presentation of a bill of lading for fresh grapes.
Mr. Heaton stated they had better have that in writing,
and the witness remarked that that was the very thing
he wanted to do. Mr. Heaton called the stenographer and
the witness just specified the different merchants and the
different amounts to be paid to each one. That writing
stated:

"I hand you herewith, $30,000, to be credited to my
account with you. Upon receipt of the bills of lading to
the order of Samuel J. and William Kornblum, with

invoices for fresh grapes, you are hereby authorized and instructed to pay out of these funds the following amounts to the following firms: Arkelian Bros. $8000; Bedig Produce $6000; E. Maljan $3000; San Joaquin Growers and Shippers Co. $10,000. You are also instructed to pay E. F. Ardzrooni, upon receipt of bill of lading and invoice for grapes, $2000, which must be, however, inspected by Mr. Cook, Inspector, and same O.K.ed by him.

"S. J. KORNBLUM."

November 19, 1920, S. J. Kornblum wrote to Mr. Heaton that on November 5th he wired to Peter Maljan, "See if you can obtain five or ten cars second muscats at $100 a ton. Now Maljan is no agent of mine. He receives his brokerage from the San Joaquin Growers and Shippers Company. Take notice that I did not tell him to *buy*, only to see if he could *obtain*, and if he succeeded in doing so he might have answered me accordingly. But instead he wired that he bought five cars from San Joaquin and one car has been shipped, the balance to follow one a day. Have wired him back what has been already shipped I would accept, but don't want any more."

It was stipulated by counsel in the trial court that the defendant paid to the San Joaquin Growers and Shippers Company $13,477.76, and that all of the payments were made upon receipt of bills of lading to the order of Samuel J. and William Kornblum. It was also stipulated that the excess payments for which the plaintiffs claimed judgment was $2,849.60, being payments on two cars, 10259 and 10238. Mr. Heaton, called as a witness on behalf of defendant, testified that his name was R. S. Heaton, that he resides at Fresno and was connected with the Bank of Italy on October 26, 1920. He stated: "S. J. Kornblum came into the bank along about 4 o'clock in the afternoon and gave some oral instruction regarding the disposition of $30,000 that he placed with me. He asked me to accept certain carloads of fruit that were to be shipped from Fresno. Well, I thought we should have more specific instructions, so I asked him to put them in writing. He said it wasn't necessary, it obstructed his agents here, but I insisted on putting it in writing, which he did. He told me from whom he

had purchased fruit in Fresno. Those parties are named in the letter dated October 26, 1920.''

Counsel stipulated that the bills of lading were received for each shipment and were duly forwarded, and each one was made for fruit and that the plaintiffs received all of the cars excepting car 10238 and car 10259, which they refused to receive, and that the amount paid for the grapes in those two cars was $2,849.60. Continuing, the witness testified that the bank paid E. Maljan $3,194.65. It was also stipulated by counsel that the amounts designated in the letter of October 26, 1920, to wit, $8,000, $6,000, $3,000, $10,000, $2,000, are not in any instance exact multiples of the value of a carload of grapes according to the price being paid by the plaintiffs.

[1] Over the objection and exception of the plaintiffs the trial court received evidence as to what was said by Mr. Kornblum and by Mr. Heaton at the time that the letter dated October 26, 1920, was being written and signed. The appellants now assign those rulings as error and claim that the effect of the rulings was to vary the terms of a written instrument. It will be noted that the written instrument was unilateral; it was signed by the agent of the appellants, but Mr. Heaton was not asked to sign, nor to accept in writing the terms of the instrument, and furthermore, he did not do so. Under these circumstances the letter was but a part of the parol evidence going to make up the agreement between the parties. (*Austin* v. *Wilcoxson,* 149 Cal. 24, 29 [84 Pac. 417].) In the case of *Neresheimer* v. *Smyth,* 167 N. Y. 202 [60 N. E. 449], there was before the court a bill of sale made by a debtor in behalf of his creditors. Moreover, there was a side agreement reduced to writing as to what the assignees were to do. Oral testimony was also received. On page 207 of 167 N. Y. [60 N. E. 451] the court said: ''Parol evidence was admissible to prove the purpose of the bill of sale, and that it was made with the consent of the creditors and for their benefit. It did not tend to contradict the writing but to show the trust arrangement between the defendant and the creditors.''

[2] The appellants cite finding number two, which is quite long, and complain that the same is not supported

by the evidence. In this behalf the appellants' grievance rests on the language "that thereafter, said defendant, pursuant to said instructions, and also further instructions given by plaintiffs to defendant, did pay out of said deposit to San Joaquin Growers and Shippers Company the aggregate sum of $13,477.76," and appellants contend that the bank was limited in its instructions to pay $10,000, and no more. We think the point is without merit. When Mr. Kornblum called on Mr. Heaton it is patent that he wanted to pay for the grapes he had bought. He mentioned the names of the parties, but did not, until questioned by Mr. Heaton, disclose the probable amount payable to each vendor. He was purchasing grapes in carloads. Until each carload was weighed the amount of the invoice could not be ascertained. As the facts later transpired, no one purchase exactly met the figure named in the letter as to any one vendor. Mr. Kornblum was particularly concerned to the effect "that they [the vendors] would not ship me any more grapes than I am buying. . . . " To that end he was employing the services of the plaintiff bank. The evidence shows that the plaintiffs have not been injured in that respect, and that the bank in no way deprived the plaintiffs of the protection which they sought. These views are further emphasized by the fact that although the plaintiffs deposited $30,000, the expenditures authorized amounted to only $29,000, and the expenditures actually made amounted to a still smaller sum.

The appellants assume, and the respondent apparently concedes, that if the bank received a bill of lading from one vendor for a car of grapes in excess of the poundage purchased from that vendor, and paid out of the appellants' funds the price thereof, then and in that event the measure of damages is the amount so paid out. We do not agree with this view of the law. *Non constat* but what the carload of grapes was needed to fill plaintiffs' purchase and was of the full value of the price paid therefor, and that the appellants were not damaged in the least. [3] In other words, if the bank received more cars from one vendor than that vendor's proportion, that fact alone would not warrant a judgment for the price paid for such car. But the appellants' right to damages "is the amount which will com-

pensate them for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, sec. 3300.) In such a case the duty rested upon the appellants to minimize the damages. They were bound to receive the grapes and sell them for the best price obtainable, and then, if they suffered damage by defendant's act, their right to recover would be, not the total sum so paid out, but the loss, if any, incurred on the particular car, proximately caused by the defendant's act. There is not in the record any evidence showing the facts touching this element of the case. On the other hand, there is evidence showing that when two of the cars arrived at their destination the appellants refused to receive the same and claimed that the contents of the cars were the property of the respondent. There is also evidence to the effect that the grapes were then left in the cars until they had greatly deteriorated in value and were then sold by some other person.

We find no error in the record. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.