HARRY F. CANELO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66150, 90641.   Promulgated April 4, 1940.

*Milton D. Sapiro, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, and *Henry M. Sorrell, Esq.*, for the respondent.

714

720

OPINION.

HARRON: 1. The basic question for determination is one of fact and is whether or not petitioner received income in the taxable years which he failed to report, and, thereby, filed false and fraudulent income tax returns for each of the taxable years with intent to evade tax. If petitioner filed false and fradulent returns for each of the years 1925 to 1928, inclusive, with intent to evade tax, the assessment and collection of the deficiencies and penalties for those years are not barred by the statute of limitations, and it will not be necessary to pass upon respondent's alternative contention that the deficiency notice for the years 1927 and 1928 was mailed within the statutory period as extended by Joint Resolution of Congress approved June 16, 1930, 46 Stat. 589, section 1009 of the Revenue Acts of 1924 and 1926, and section 276 of the Revenue Act of 1928. *Summerill Tubing Co.*, 36 B. T. A. 347. Petitioner has waived the defense of the statute of limitations with respect to the year 1929. Moreover, if petitioner filed false or fraudulent returns for each of the taxable years with intent to evade tax, the further question of whether part of the deficiency for each of the taxable years is due to fraud with intent to evade tax is in large part answered. Cf. *Summerill Tubing Co.*, supra.

In support of his allegations that the income tax returns of petitioner for the taxable years were false and fraudulent with intent to evade tax, respondent introduced in evidence the sheets of the stock trading accounts of petitioner with the two brokerage firms, which, upon their face, do not show the existence of a trust. Respondent contends that the income from securities, consisting of dividends and gains from sales, was petitioner's income in the taxable years, and that petitioner's failure to report as his income all of such gains and dividends was an omission committed with intent to evade tax thereon. Respondent contends that the filing of a fiduciary return for the "Harry F. Canelo Trust" and the allocation of income to the alleged beneficiaries of that alleged trust was not justified by facts, and represented a device to evade taxation.

Petitioner maintains that the income from the sale of securities in his accounts and from dividends on securities in his accounts belonged either to a trust, or to a partnership or joint venture, in

which he had a one-fifth interest in the years 1925, 1926, and 1927, and a one-tenth interest in the years 1928 and 1929, and that in his individual returns for each of the taxable years, petitioner correctly reported his entire interest in the income of the trust, or the partnership or joint venture.

A clear and understandable statement of petitioner's theory as to how the alleged trust, or the alleged partnership or joint venture, was created is not to be found, either in the record or in petitioner's briefs. All the testimony on this subject was given by petitioner, and there are wide gaps in his testimony. With respect to the creation of the alleged trust, or the alleged partnership or joint venture, petitioner testified that on or about June 11, 1925, a conference was held, which was attended by Addie Kelly Canelo, Adolph B. Canelo, Jr., C. Kelly Canelo, Mildred Hadley Canelo, and petitioner; that petitioner declared at the conference that he was going to give $2,000 each to Addie Kelly Canelo, C. Kelly Canelo, Mildred Hadley Canelo, and Louise Mercedes Canelo; that it was agreed at the conference that petitioner was to use the amounts, which he declared he was going to give to the individuals named above, to open a margin trading account in which petitioner was to purchase and sell securities; that subsequent to the conference petitioner borrowed $10,000 on his own note from the First National Bank of San Jose; and that with the amount borrowed petitioner opened the original margin trading account in his own name on June 12, 1925. It should be pointed out that petitioner's testimony on this subject has not been supplemented or substantiated by the testimony of any of the other members of the Canelo family allegedly present at the "conference" held on or about June 11, 1925. Cf. *James L. Robertson*, 20 B. T. A. 112.

Petitioner's theory that the income realized during the taxable years from the operations in petitioner's brokerage accounts belonged to either a partnership or a joint venture is wholly without foundation. One of the fundamental requisites of both a partnership and a joint venture is that each of the members thereof must contribute either property or services. *Chase S. Osborn*, 22 B. T. A. 935. See *Abraham Sultan*, 22 B. T. A. 889; *Harry C. Fisher*, 29 B. T. A. 1041. There is no evidence that any of the alleged copartners or joint venturers, other than petitioner, contributed any property which was used in the operation of the brokerage accounts. At the time when petitioner declared that he was giving $2,000 to each of the four members of the Canelo family named above, petitioner had not borrowed the funds with which he opened the original brokerage account; and between the time when petitioner made the declaration and the time when he opened the account he did not deliver any money to any of the four members of the Canelo family. An irrev-

ocable transfer by the donor to the donee is an essential requisite of a valid gift *inter vivos*. See *Adolph Weil*, 31 B. T. A. 899, 906; Civil Code of California, sec. 1147. It is, therefore, clear that petitioner did not make a valid gift *inter vivos* of any of the funds used by him to open the original brokerage account. In addition to contributing all the property used in the operation of the brokerage accounts, petitioner alone, of the alleged copartners or joint venturers, contributed services. Since all the property and services used in the operation of the accounts were contributed by petitioner, it follows that there was neither a partnership nor a joint venture.

Petitioner's theory that the income, realized during the taxable years from the operations in petitioner's brokerage accounts, belonged to a trust is also without merit. Petitioner contends that the alleged trust was created orally. It should be pointed out that the fact that an oral trust was created must be established by clear and convincing evidence. *Austin* v. *Wilcoxson*, 149 Cal. 24; 84 Pac. 417; *First Union Trust & Savings Bank* v. *United States*, 5 Fed. Supp. 143; *Cooper* v. *United States*, 19 Fed. Supp. 752; Wigmore on Evidence, 2d ed., sec. 2498. There is no evidence here to support a finding that a valid oral trust was created. The declaration which petitioner allegedly made to the effect that he was giving $2,000 each to four members of the Canelo family would not constitute a declartion of trust, because petitioner at the time when he made the alleged declaration had not borrowed the funds with which he opened the original brokerage account. At most the alleged declaration would constitute a mere gratuitous promise to create a trust in the future. See *Brainard* v. *Commissioner*, 91 Fed. (2d) 880; *Noble* v. *Learned*, 153 Cal. 245; 94 Pac. 1047.

Moreover, the self-serving statements which petitioner made to the floor men who handled his brokerage accounts and to the insurance agent from whom he purchased the annuities, to the effect that other members of the Canelo family had financial interests in the brokerage accounts in his name, are, in the light of other evidence in this proceeding, entitled to little weight. At best, these self-serving statements were mere legal conclusions. Cf. *W. M. Buchanan*, 20 B. T. A. 210, 212; *James L. Robertson*, 20 B. T. A. 112.

The manner in which petitioner conducted the brokerage accounts and handled the income realized from the operation of the accounts conclusively indicates that there was no trust. If there had been a trust, petitioner, as settlor, trustee, and one of the beneficiaries, would have been required to administer the trust with a high regard for his responsibilities as a fiduciary. See *William C. Rands*, 34 B. T. A. 1107. However, during the taxable years petitioner made no attempt to perform even the most rudimentary duties of a trus-

tee. A trustee is under a duty to keep trust property separate from his individual property and to designate the trust property as property of the trust. See Restatement of the Law of Trusts, vol. 1, section 179; cf. *Herbert L. Dillon*, 32 B. T. A. 1254; *Emil Frank*, 27 B. T. A. 1158. However, petitioner at no time did any of the above. Not a single one of the three accounts with Anderson & Fox and the eleven accounts with E. A. Pierce & Co. was designated as a trust account; all of the accounts were opened and maintained in petitioner's own name; not a single withdrawal from the brokerage accounts was made by a check payable to petitioner's order as a trustee. All of the withdrawals were made by checks payable to petitioner's order as an individual, with the exception of the following: One check was drawn payable to the order of Adolph F. Canelo, Jr., brother, not an alleged "beneficiary" of the alleged trust; one check was drawn payable to the order of the First National Bank of San Jose, to which petitioner was indebted, and one check, payable to the order of the French American Bank, was deposited in petitioner's account there. Moreover, while a trustee can properly make general deposits of trust money in a bank, it is his duty properly to earmark the deposit as a deposit by him as trustee. See Restatement of the Law of Trusts, vol. 1, secs. 179, 180; cf. *Russell C. Mauch*, 35 B. T. A. 617. None of the $496,207.67 withdrawn from the brokerage accounts during the taxable years was deposited in a bank account which was designated as a trust account; over 90 percent of the total amount withdrawn was deposited in bank accounts which were in petitioner's name as an individual and in which the amount withdrawn was mingled with other funds of petitioner.

Furthermore, a trustee is under a duty not to use trust funds for his own purposes. Cf. *Russell C. Mauch, supra*. During the taxable years petitioner admittedly used for his own purposes funds withdrawn from the brokerage accounts far in excess of the total amount of his reported beneficial interest in the net income of the so-called "Harry F. Canelo Trust." Out of the $496,207.67 withdrawn from the brokerage accounts during the taxable years petitioner made a loan of $25,000 to a corporation in which his father had a financial interest, and petitioner received the note of that corporation made payable to his order as an individual, cf. *William C. Rands, supra;* purchased two annuities for the total amount of $100,000, in both of which he was the annuitant as an individual; and paid off a note in the amount of $47,000 on which he was obligated as an individual. These disbursements total $172,000, while the total amount of petitioner's reported beneficial interest in the so-called "Harry F. Canelo Trust" was $50,163.90. It should be noted also that petitioner has

failed to give any explanation as to how he used approximately $167,628.18 of the $496,207.67 withdrawn by him from the brokerage accounts.

The alleged beneficiaries of the "Harry F. Canelo Trust" were held out to be the owners of trust income totaling $349,609.29 over the period 1925 to 1929, inclusive. Returns for them were filed reporting proportionate amounts of the income realized by petitioner in the operation of brokerage accounts. But petitioner's testimony shows that he not only received all the sums withdrawn from the brokerage accounts, but he also was the sole and unqualified owner of the income. All income withdrawn, with a few exceptions not material, was deposited in petitioner's own bank accounts; the so-called beneficiaries did not receive directly any distributions other than a few small sums given to them by petitioner; three beneficiaries never received any money or property, in any manner, despite the statement to the Government in their separate returns that they owned income aggregating $109,712.39. While petitioner devoted to his own uses sums in excess of his alleged "share" of "trust income," he did not demonstrate or indicate any indebtedness from himself to the trust. For that matter, petitioner does not argue that he was indebted to the trust, but passes over the point which suggests itself on the face of the theory advanced that other persons owned income which they never received from the alleged trust. The facts show that petitioner expended various amounts on behalf of his mother, Addie Kelly Canelo; his daughter, Louise Mercedes Canelo; his niece, Maureen Canelo Fowler; and his brother, C. Kelly Canelo. Petitioner made these expenditures on behalf of his relatives in the purchase of property, goods, services, and medical attention. The expenditures were not in relation to any interest in a "trust." The conclusion is inescapable that the expenditures represented gifts from petitioner, and, in the case of his daughter, disbursements in fulfillment of an obligation to support a minor child. All expenditures by petitioner aggregated $116,450, in the taxable years, plus $3,000 in 1930, as against $349,609.29 reported to the Government as income owned by alleged trust beneficiaries.

Upon the evidence before us, there remains no doubt that petitioner realized large amounts of income from gains and dividends from stocks purchased in trading operations; that he evaded tax upon this income by using the members of his family, relatives who were recipients of gifts from him and were not likely to question his conduct, to make reports to the Federal Government that they owned the above income, all of which was false and untrue. The record fails to show facts upon which it could be concluded that petitioner had grounds to believe, honestly, that a trust existed,

and that other persons owned the income realized through his own purchases and sales of securities. Petitioner's conduct throughout shows that he was the sole owner of all of the income derived from the brokerage accounts in his name, and that. he made no attempt whatever to perform even the most rudimentary duties of a fiduciary. It is beyond credence that petitioner filed the fiduciary returns and his individual returns in the innocent belief that there existed a "Harry F. Canelo Trust." *James H. Persons*, 5 B. T. A. 716; *I. J. Adelson*, 7 B. T. A. 110; *Grover C. Blumer*, 23 B. T. A. 1045; *L. Schepp Co.*, 25 B. T. A. 419; *Charles E. Mitchell*, 32 B. T. A. 1093; affd., 303 U. S. 391. Further, the record does not show that any of the alleged trust beneficiaries ever regarded themselves as beneficiaries of a trust. Petitioner, himself, had all the individual returns prepared and filed. Petitioner admits that he paid all the income tax reported on the individual returns of some of the alleged beneficiaries. As for the individuals themselves, they signed the individual returns upon petitioner's request, and it is entirely possible that they did not realize the purport of their acts.

There are several facts of consequence in the record which indicate conclusively that the division of the income realized from the operations in petitioner's brokerage accounts on the basis of the so-called "Harry F. Canelo Trust" was merely a tax evasion device. Cf. *James H. Persons, supra; Grover C. Blumer, supra.* In the first place, the net income reported in the fiduciary return for 1928 was five times the net income reported in the fiduciary returns for 1926 and 1927, and three times the net income reported in the fiduciary return for 1925. In the fiduciary return for 1928 the net income was divided among nine alleged beneficiaries instead of among five alleged beneficiaries, as had been done in the fiduciary returns for 1925, 1926, and 1927. Petitioner gave no satisfactory explanation for this convenient increase in the number of alleged beneficiaries. He testified that in 1927 he made an oral "gift" of one-half of his interest in the so-called trust to his sister, Mae Canelo Fowler. He gave no explanation as to how C. Kelly Canelo, Jr., Dolores Marie Canelo, and Mae Canelo Fowler became "beneficiaries" of the so-called trust in, or prior to, the year 1928. The obvious and only conclusion is that the number of alleged beneficiaries was increased in the fiduciary return for 1928 solely for tax reduction purposes. Moreover, it is significant that in the fiduciary returns for 1926, 1927, and 1928 .the petitioner grossly understated the amount of profit realized from the sale of securities through his brokerage accounts. This fact lends further support to the conclusion that tax evasion motives caused petitioner to file the false fiduciary and individual returns.

Despite the fact that the fiduciary and individual returns for the years 1925, 1926, and 1927 were prepared by Adolph B. Canelo, Jr., and for the years 1928 and 1929, by a firm of accountants, the responsibility for filing the false returns rests squarely upon petitioner's shoulders. *D. C. Clarke*, 22 B. T. A. 314; *Grover C. Blumer, supra; Estate of E. A. Wickham*, 22 B. T. A. 1393; affd., 65 Fed. (2d) 527; *Harry Feldman*, 34 B. T. A. 517. Furthermore, the fiduciary and individual returns filed by petitioner did not serve to put the Government on notice of the fact that there actually was no "Harry F. Canelo Trust." *James H. Persons, supra; I. J. Adelson, supra; Grover C. Blumer, supra;* cf. *Victor A. Dorsey*, 33 B. T. A. 295; *Rogers Recreation Co.* v. *Commissioner*, 103 Fed. (2d) 780; *Jemison* v. *Commissioner*, 45 Fed. (2d) 4.

It is held that the entire amount of income realized from the operations in petitioner's brokerage accounts during the taxable years was petitioner's income and taxable to him; that the division of that income between petitioner and other members of the Canelo family on the basis of the so-called "Harry F. Canelo Trust" was merely a tax evasion device; that petitioner received all of the income realized by operation of the brokerage accounts; and that petitioner's failure to report all of this income in his own returns was due to his intention to defraud the Government of taxes. Petitioner filed false and fraudulent returns for each of the taxable years with intent to evade tax. *James H. Persons, supra; I. J. Adelson, supra; Grover C. Blumer, supra;* and see *Estate of C. A. Wickham, supra.* The respondent has sustained the burden of proof upon the fraud question. Respondent correctly assessed 50 percent of the total deficiency in each year as additions to the deficiencies.

The next question is whether or not respondent has properly determined the amount of income from dividends and profits realized from the brokerage accounts, upon which petitioner is taxable. "While it is usually true that in order to show that a return is false and fraudulent with intent to evade tax, it is necessary to prove the receipt of income not reported by the taxpayer in such return, but, once it is shown that the return is false and fraudulent, the burden of proving the respondent erred in determining the deficiency is on the petitioner. The issues are clearly separate. *L. Schepp Co.*, 25 B. T. A. 419, 436." *John Kehoe*, 34 B. T. A. 59, 70; affd., 309 U. S. 277. The above quotation states the rule as to burden of proof on the matter of the correctness of respondent's determination of the amount of income to be taxed. However, under the Board's Rules of Practice, Rule 32, the burden of proof is upon the respondent with respect to any new matter

pleaded in his answer. *Berkshire Cotton Manufacturing Co.*, 5 B. T. A. 1231. And so, upon the pleadings in this case, the rule as first stated above is applicable, except as to the allegations made by respondent in his amended answer in Docket No. 66150, as to the amounts of dividends and gains received by petitioner in 1927 and 1928. In his original determination, respondent added to the net income reported by petitioner for the year 1927 $21,308.91 in dividends and $5,279.25 in "other income", and to the net income reported by petitioner for the year 1928 $23,597.83 in dividends and $120,634.68 in "other income." In his amended answer, respondent has asserted increased deficiencies and penalties for the years 1927 and 1928, and has alleged that from the sale of securities in his brokerage accounts petitioner realized a profit of $86,549.42 in 1927 and a profit of $514,141.95 in 1928, and that on the securities held in his brokerage accounts petitioner received dividends of $23,-961.64 in 1927 and of $23,673.26 in 1928. These allegations have been denied by petitioner in his reply to the amended answer.

To satisfy his burden of proof, respondent introduced in evidence the brokers' sheets relating to petitioner's margin accounts with Anderson & Fox and E. A. Pierce & Co.; testimony of a special agent who had computed from the brokers' sheets the amount of profit realized by petitioner in 1927 and 1928, and the amount of dividends received by petitioner in 1927 and 1928; and an analysis of the computations made by the special agent. In computing the amounts of profit realized by petitioner in 1927 and 1928 from the sale of securities through his margin accounts, the special agent applied the so-called "first in, first out" rule, as provided by article 39 of Regulations 69 and article 58 of Regulations 74, the pertinent provisions of which are set forth in the margin.[2] Also, he applied the first in, first out rule as if all of the petitioner's accounts with each brokerage firm constituted but one account with that firm.

The first in, first out rule is to be applied only when the identity of the lots sold can not be determined. See *Helvering* v. *Rankin*, 295 U. S. 123; *Snyder* v. *Commissioner*, 295 U. S. 134. In the *Rankin* case, the Supreme Court stated that the required identification of the lots sold was supplied "if the margin trader has, through his broker, designated the securities to be sold as those purchased on a particular date and at a particular price." Moreover, it has been held that when a trader sells stocks which are deposited with several depositaries, the first in, first out rule is not to be applied as if

---

[2] Regulations 69, art. 39 ; Regulations 74, art. 58.—

*Sale of stock and rights.*—When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock. The excess of the amount realized on the sale over the cost or other basis of the stock will constitute gain.

all sales were made from a common location. *Bancitaly Corporation*, 34 B. T. A. 494, in which the Board stated at page 507: "The shares delivered from a particular depositary necessarily must have been out of the shares available at that depositary and can not, by any arbitrary application of the first in, first out rule be presumed to have been out of the shares available in another depositary · * * *."

On brief, petitioner makes a broad allegation that the special agent's computations of the amount of profit realized by petitioner in 1927 and 1928 from sales of securities through his margin accounts are incorrect. However, petitioner points to no specific errors in the special agent's computations. The argument advanced by petitioner is very general in scope and is not altogether clear. As we understand his argument, petitioner claims that the first in, first out rule was not applicable because certain instructions which he gave the brokers supplied the required identification of the securities sold. To support this claim petitioner relies upon his testimony to the effect that it was his general practice, in selling securities through his margin accounts, first, to give a general order of sale to the broker, and then, subsequently, to instruct the broker to credit the proceeds of the sale to a particular one of his accounts with that broker. Petitioner further claims that it was wrong for the special agent to apply the first in, first out rule as if all petitioner's accounts with each brokerage firm constituted but one account with that firm.

We have made a careful examination of the brokers' sheets relating to petitioner's margin accounts and the analysis of the computations made by the special agent. We conclude that the special agent correctly applied the first in, first out rule.

There is no merit to the petitioner's claim that the first in, first out rule is not applicable because the instructions which he gave to his brokers supplied the required identification of the securities sold. Those instructions, described above, did not constitute such a designation of the securities sold "as those purchased on a particular date and at a particular price." See *Helvering* v. *Rankin*, *supra*.

Also, there is no merit to petitioner's claim that it was wrong for the special agent to apply the first in, first out rule as if all of petitioner's accounts with each brokerage firm constituted but one account with that firm. The record shows that although petitioner, in form, maintained eleven accounts with E. A. Pierce & Co., and three accounts with Anderson & Fox, in reality, he had but one margin account with each firm. Each firm computed petitioner's margin requirements as if the several accounts with that firm constituted but one single account. Petitioner himself treated the several accounts with each firm as if they constituted but one single account with that firm. The securities and credit balances in the

several accounts with each firm were transferred frequently from one account to another. A typical example of the manner in which petitioner transferred securities from one account to another is provided by his purchases and sales of Union Oil Associates stock through his accounts with E. A. Pierce & Co. From March 23 to September 29, 1926, petitioner traded in that stock in his Harry F. Canelo #2 account. On or about September 29, 1926, he transferred his holdings of that stock from his Harry F. Canelo #2 account to his Local Securities #2 account. From that time until June 30, 1928, petitioner traded in that stock in his Local Securities #2 account. On June 30, 1928, he transferred his holdings of that stock to his Local Securities account, and from that time until the end of the year petitioner traded in that stock in his Local Securities account. Thus petitioner's trading operations in that stock in his Local Securities #2 account were merely a continuation of his trading operations in his Harry F. Canelo #2 account, and, in turn, his trading operations in his Local Securities account were merely a continuation of his trading operations in his Local Securities #2 account. In the light of these facts it was proper for the special agent, in his application of the first in, first out rule, to treat all of petitioner's accounts with each brokerage firm as if they constituted but one account with that firm. Cf. *Walter B. Green, Administrator*, 35 B. T. A. 812.

The record also shows that in his application of the first in, first out rule, the special agent charged at least one lot of Bank of Italy stock sold in 1928 through petitioner's account with E. A. Pierce & Co. against lots of Bank of Italy stock purchased through petitioner's account with Anderson & Fox. This application of the first in, first out rule does not violate the separate deposit theory of the *Bancitaly Corporation* case. Petitioner closed his Anderson & Fox accounts in April of 1927 and in 1928, when the particular sales of Bank of Italy stock were made, petitioner's holdings of that stock were deposited in but a single depositary. Moreover, the brokers' sheets show that at the time when petitioner's account with Anderson & Fox was closed petitioner transferred his holdings of Bank of Italy stock from that account into his Harry F. Canelo #3 account with E. A. Pierce & Co. Thus shares of Bank of Italy stock purchased in petitioner's account with Anderson & Fox actually became available in petitioner's account with E. A. Pierce & Co. prior to 1928.

Respondent has sustained his burden of proving the increased deficiencies and penalties for 1927 and 1928. The evidence introduced by respondent shows, and we have found as a fact, that petitioner received dividends of $23,961.64 in 1927 and dividends of

$23,262.26 in 1928 on the securities held in his brokerage accounts; that from the sale of securities through his brokerage accounts petitioner realized a profit of $86,809.77 in 1927 and a profit of $514,141.95 in 1928; and that, of the amount of profit realized by the petitioner in 1928 from the sale of securities through his brokerage accounts, $164,531.94 was realized from the sale of securities held by petitioner for more than two years.

As for the amounts of income which respondent has determined were realized by petitioner in the years 1925, 1926, and 1929 and the amounts of dividends on stocks which respondent determined were received by petitioner in 1927 and 1928, petitioner has not introduced evidence to overcome the prima facie correctness thereof. Respondent's determinations for those years are sustained.

2. Respondent added $4,608.70 to the net income reported by petitioner in his return for 1925, on the ground that petitioner received additional dividends in that amount in 1925 on his stock in the Auzerais Estate Co. Petitioner contends that the amount in question was a distribution in liquidation, and constituted a nontaxable return of capital.

Even if it were conceded that the amount in question was a distribution in liquidation, the amount in question was taxable income to the extent that it represented a gain to petitioner. Sec. 201 (c), Revenue Act of 1924; see *Fred T. Wood*, 27 B. T. A. 162. There is no evidence to show the basis of the stock for purposes of determining gain or loss. Petitioner has introduced no evidence to show either the time when he acquired the stock or the basis of the stock in the hands of the person who gave him the stock (sec. 204 (a) (2), Revenue Act of 1924), or the fair market value of the stock at the time of the gift (sec. 204 (a) (4), Revenue Act of 1924). Petitioner has failed to overcome the prima facie presumption of correctness of the respondent's determination. It is held that respondent properly added the amount in question to petitioner's income in 1925. *Frank C. Hughson*, 10 B. T. A. 242. Cf. *Jemison v. Commissioner, supra.*

3. Petitioner took a deduction in the amount of $3,671 in his return for 1925, and made the following statement in explanation: "Note V. Hayes former partner Hayes & Canelo—which firm was dissolved—Paid off same." Respondent disallowed the deduction.

Petitioner has the burden of showing that the amount in question was deductible under the provisions of one of the subdivisions of section 214 of the Revenue Act of 1924. The record shows that petitioner paid the amount in question to discharge an obligation of the firm of Hayes & Canelo, which had been dissolved in 1923 and in which he had been a copartner. As a partner in the firm of Hayes & Canelo, petitioner was liable, individually and personally, for the

amount of the firm's obligation, and the dissolution of the partnership did not terminate his liability. Mechem, Elements of Partnership, 2d ed. 1920, secs. 313, 400, 402. Thus, in effect, petitioner paid the amount in question to discharge an obligation of his own. Petitioner has not established his right to take a deduction merely by showing that he paid the amount in question to discharge his own obligation. *J. H. Hulme*, 9 B. T. A. 31. It is held that respondent properly disallowed the deduction.

4. Petitioner, in his petition to the Board, claims a loss of $1,575 on a "trade" of an automobile, stating in the petition that:

\* \* \* his original car was wrecked and was then repaired and sold; and as part of the consideration he took an automobile in trade and that he then had to sell the automobile at a tremendous loss. \* \* \* that this loss of value in the second automobile, taken in trade for the first, is a proper deduction.

In petitioner's brief this issue is not argued. The question is confused, and the evidence is very scant. The loss claimed on the return was disallowed by the respondent. The burden of proof on the petitioner was to introduce proof of the loss and of the amount of the claimed loss. This involves proof, at least, of the adjusted basis to petitioner of the automobile on which loss is claimed and proof of the amount for which it was sold. The only evidence is petitioner's testimony to the effect that he borrowed a car from his wife, that it was damaged in a collision, that petitioner spent $750 for repairs, and that he, thereafter, sold the car. No evidence is presented about the alleged trade of an automobile, stated in the petition to have been made. If such trade was made, evidence should have been introduced. Also, even if petitioner expended $750 for repairs to a car which he sold later, that expenditure conceivably could have increased the cost basis, for determining a loss, and the sum obtained upon sale may or may not have resulted in a loss in the amount claimed, namely, $1,575. As the issue is presented, petitioner is not claiming a deduction for a loss of $750 as a loss sustained from a casualty, (sec. 214 (a) (6), Revenue Act of 1926), but he is claiming a loss either from a transaction entered into for profit or from a loss incurred in his business. In either case, petitioner has failed to prove that he sustained a loss of $1,575. Respondent, therefore, is sustained in his disallowance of the loss.

5. Respondent included in petitioner's income for 1929 $1,564.75 as dividends received by petitioner in 1929 directly, and not through his brokerage accounts with E. A. Pierce & Co. Petitioner has introduced no evidence to overcome the prima facie presumption of correctness of respondent's determination. Respondent's determination is sustained.

6. Respondent added $90 to the net income reported by petitioner in his return for 1929, as interest on tax-free covenant bonds which

petitioner failed to include in his return. Petitioner introduced no evidence in support of his assignment of error as to this determination. Under the provisions of section 144 (d) of the Revenue Act of 1928, respondent correctly added the amount in question to the net income reported by petitioner in his return for 1929. See *Margaret E. B. Fleming*, 36 B. T. A. 773, 778.

7. In his returns for the years 1925, 1926, and 1929, petitioner took deductions of $3,749, $4,719.18, and $4,425, respectively, for expenditures in the operation of several automobiles used by petitioner in carrying on his business of selling automobiles, and depreciation on one automobile used in carrying on his business. Respondent disallowed the deductions, with the exception of $3,000 for 1929, on the ground that the deductions represented personal expenses and had not been substantiated.

We have found as a fact, that petitioner expended $3,694 in 1925, $2,474 in 1926, and $3,400 in 1929 in the operation of automobiles, and that the automobiles in question were used by petitioner 70 percent of the time in carrying on his business. It is held that petitioner is entitled to deductions for 70 percent of the above amounts in the respective years, under the provisions of section 214 (a) (1) of the Revenue Acts of 1924 and 1926, and section 23 (a) of the Revenue Act of 1928. *J. R. James*, 2 B.T.A. 1071. Also, we have found as a fact, that in each of the years 1925, 1926, and 1929 petitioner was the owner of a new Lincoln automobile, which he had purchased at the beginning of the year; that the automobiles owned by petitioner in 1925 and in 1929 each had a wholesale cost of $4,100; and that the automobile owned by petitioner in 1926 had a wholesale cost of $4,700; that the automobiles in question were used 70 percent of the time in carrying on petitioner's business; that the probable useful life of each of the automobiles in question was four years; and that a reasonable rate of depreciation was 25 percent. It is held that petitioner is entitled to deductions for 70 percent of the amount of the annual depreciation on the automobiles owned by petitioner in the respective years under the provisions of section 214 (a) (8) of the Revenue Acts of 1924 and 1926 and section 23 (k) of the Revenue Act of 1928. *J. R. James, supra.*

8. In his returns for the years 1925, 1926, and 1929 petitioner took deductions for contributions of $1,500, $1,350, and $3,310, respectively. Respondent disallowed the deductions, with the exception of $250 for 1929, as "not substantiated."

The facts show that all the donees of the contributions were organized and operated exclusively for religious, charitable, or educational purposes, with the exception of "C. W. C.", about which the record is silent; and that, exclusive of a contribution of $125 to "C. W. C.", petitioner's contributions to charitable organizations

amounted to $1,300 in 1925, $1,225 in 1926, and $3,310 in 1929. It is held that deductions are allowable in the above amounts in the respective years under section 214 (a) (10) of the Revenue Acts of 1924 and 1926, and section 23 (n) of the Revenue Act of 1928. *Adam Ortseifen*, 14 B. T. A. 1403.

Reviewed by the Board.

*Decision will be entered under Rule 50.*