[Civ. No. 18669.   Second Dist., Div. Two.   Dec. 14, 1951.]

EARL D. SMITH et al., Respondents, v. WARREN SEYMOUR SMITH et al., Appellants.

EARL D. SMITH, as Administrator, etc., Respondent, v. ELSA MINA SMITH et al., Appellants.

David G. Watts for Appellants.

Richard L. North, Joseph J. Jonesi and Russell K. Lambeau for Respondents.

MOORE, P. J.—Defendants appeal from a judgment imposing a trust upon certain personal property in their possession and declaring that respondent Earl Smith as administrator of the estate of Minnie A. Smith is entitled to such property.

Respondent, Earl D. Smith, son of decedent, initiated this action to impress a trust in favor of the heirs of decedent upon the proceeds from the sale of certain realty situated in Salt Lake City, Utah, one thousand shares of the capital stock of Equity Oil Company, and $1,700 in money—all formerly owned by decedent and transferred shortly before her death to respondents' brother, Warren, and the latter's wife, Elsa.

Mrs. Smith deceased in Los Angeles on May 17, 1948, at the age of 78. She formerly resided in Salt Lake City where in March, 1948, she was severely injured in an accident. During the period of her ensuing hospitalization, her daughter-in-law Elsa paid her a visit on April 13 and remained there until the 24th when she returned to her own home in Los Angeles, accompanied by Mrs. Smith. Just prior to such departure for Los Angeles, decedent delivered a deed conveying her Utah realty to Elsa and Warren. At the same time she presented to appellants her household furniture, a draft for $800 or $900 and endorsed in blank and delivered to appellants her certificate for the shares of Equity Oil Company.

Appellants answered affirmatively that there was an absolute transfer of the property to them in consideration of their promise to care for decedent and to assume and pay the expenses of her funeral and her last illness. A second affirmative defense alleged that an outright gift of her Utah home and the various items of personalty had been made to appellants by decedent. However, the trial court found that such property was transferred "only in trust for the use and benefit of the said Minnie A. Smith, with the right in the defendants to apply so much thereof as might be necessary for the support, care and maintenance of the said Minnie A. Smith." Accordingly, it was adjudged that Earl, as administrator of decedent's estate was entitled to the possession of all the personalty including the proceeds from the sale of the real property which had been effected by appellants.

The latter now contend that the evidence is insufficient to support the findings that a trust was intended, that such evidence is not "clear and convincing" and thus does not meet the rule that testimony as to the oral admissions of any person must be received with caution (Code Civ. Proc., § 2061)

but when he is dead and it is impossible to contradict the witnesses who testify, an even greater degree of caution must be exercised for the reason that evidence so given under such circumstances is the weakest and most unsatisfactory (*Austin* v. *Wilcoxson,* 149 Cal. 24, 29 [84 P. 417].) The ensuing discussion will disclose that such rule more aptly applies to the proof offered by appellants.

The sole question for decision, therefore, is whether there is any substantial evidence supporting the trial court's determination that decedent never intended an outright gift to appellants, but rather contemplated a transfer in trust for her support.

The record discloses that the most that can be said for appellants' contention is that there is a conflict in the evidence. Certainly there is substantial evidence in the form of testimony by Warren and Elsa that they were given the property absolutely. With equal force it may be asserted that the record contains evidence that decedent did not intend appellants to take the entire and absolute interest in her property. Such evidentiary support consists first of the following two documents signed by decedent on April 21 and 22:

"I saw Mr. Allen today and he said he would see me tomorrow·about things. Do you want him to keep your stock or should I take it with me and put it in a deposit box for you when we get home? He said if you wanted to, he would turn the papers he had over to Warren by giving them to me to take down there. Will put it in bank for you. He said he would let me have money to pay for your bills and then get a draft for the rest and we will bank it for you. Will you sign your name on this and I'll show it to him?

(Signed) Minnie A. Smith."

"April 22, 1948. To Whom It may Concern:

"In the event of my death I wish my Equity Oil Company stock Certificate No. 4891 to go to Warren S. and Elsa M. Smith.

(Signed) Minnie A. Smith."

These instruments do not indicate an absolute transfer to Elsa but on the contrary support the finding that decedent made the transfer of her stock and other valuables only to a custodian for safekeeping. Both writings were prepared by Elsa and submitted to decedent while preparations were being made for the trip to Los Angeles.

Further support is found in the inconsistency revealed by

Elsa's own testimony when she related that upon arriving in Los Angeles she felt the property all belonged to her and Warren and that her mother-in-law had no further interest in it. Yet, four days after arriving in the metropolis, she opened a joint account with decedent in which was deposited the $900 draft given to her in Utah.

Elsa testified that decedent on April 18 gave her the furniture in the Utah home, that she sold it to her own mother who sent a money order to Los Angeles payable to Elsa. But Elsa had decedent sign the receipt for such money.

Appellants' defense that the property was transferred to them in consideration of their promise to care for decedent was completely refuted by Elsa's own testimony that "there were no promises made." In addition, the record shows that a claim was presented to respondent as administrator of decedent's estate for hospital services rendered decedent just prior to her death.

Appellants' first exercise of ownership over any of the property occurred only after decedent suffered a stroke and was hospitalized for her last illness. Elsa testified, though, that decedent's physician had advised her that decedent would live for a number of years, notwithstanding her stroke. The doctor denied making such a statement.

Appellants argue that it was only natural that the decedent should have transferred her property to them since it was Elsa who journeyed to Salt Lake to look after the aged and infirm lady and that it was they who cared for her in Los Angeles. This is a logical argument, but it cannot be regarded as absolutely conclusive in the light of the record. Mr. and Mrs. Kinnaird had known decedent for a long period of years. They testified that they had visited her in the Utah hospital; that she had during the last year of her life stated that Earl was her favorite son; that she had declared with reference to Elsa, "I don't like that woman"; that she had said with reference to her property, "who can get it but my sons?"

On the whole, it was established by substantial evidence that the decedent made the transfers to appellants not as outright gifts or pursuant to any promises of care and support but merely to accomplish the move to Los Angeles and to facilitate the management and ultimate disposition of the property by appellants when decedent was not physically able to do so herself.

Judgment affirmed.

McComb, J., concurred.